# EXHIBIT A


Copy 20

IN THE CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE
AT NASHVILLE

FILED
2013 DEC 27 PH 12: 10
RICHARD R. ROOKER CLERK
D.C.

| | |
|---|---|
| SHANE and ALYSON DECKER, | ) |
| Plaintiffs, | ) |
| v. | ) JURY DEMAND |
| HANOVER INSURANCE COMPANY, | ) Case No.: 13C5337 |
| Defendant. | ) |

## COMPLAINT

Plaintiffs, Shane & Alyson Decker, for their Complaint against Defendant, Hanover Insurance Company ("Defendant" or "Hanover Insurance") would respectfully show and allege to the Court as follows:

### GENERAL ALLEGATIONS

1.     Plaintiffs, Shane & Alyson Decker, own property located at 520 Scotts Creek Trail, Hermitage, TN 37076.

2.     Defendant, Hanover Insurance is a for-profit insurance company authorized to engage in, and does engage in, the sale and delivery of property insurance within the State of Tennessee with its principle place of business located at 1024 Sitting Bull Crossing, Murfreesboro, TN 37128. The registered agent for service of process of Hanover Insurance is the Tennessee Department of Commerce and Insurance, 500 James Robertson Parkway, Nashville, TN 37243.

3.     Plaintiffs' claim for relief arises from a covered loss to their property located at 520 Scotts Creek Trail, Hermitage, TN 37076 (hereinafter the "Property"). Venue is proper pursuant to Tenn. Code Ann. § 20-4-103.

1

Copy

4. At all times material hereto, Plaintiffs have been the owners of the Property.

5. Plaintiffs renewed or procured a policy of homeowners insurance ("Policy"), from Defendant covering the above-referenced Property on or about August 3, 2012. A certified copy of the Policy has been provided by Defendant and is attached as Exhibit 1.

6. In consideration of monies paid by Plaintiffs to Defendant, the Policy was issued, insuring the Plaintiffs' Property against risks, including sinkhole collapse. The insurance policy provided dwelling insurance coverage in the amount of $193,000.00, in addition to other coverages.

7. Plaintiffs have renewed the Policy each and every year and have paid all premiums due thereunder and otherwise met all conditions of coverage thereunder.

8. On or about May 13, 2013, while the Policy was in full force and effect, the Property was damaged as a result of sinkhole activity.

9. The damage to Plaintiffs' Property is caused by a covered peril under the Policy.

10. A notice of loss and damage was properly given by Plaintiffs to Defendant in accordance with the terms of the Policy.

11. On or about June 25, 2013, Defendant sent HSA Engineers and Scientists out to conduct an investigation of the Plaintiffs' Property.

12. HSA Engineers and Scientists confirmed sinkhole activity on the Property, and determined that the ground surface depressions were caused by sinkhole activity.

13. On or about August 26, 2013, Defendant advised Plaintiffs that it was denying coverage under the Policy. Defendant admitted that there is damage to the Plaintiffs' house but denied that the conditions were affecting the structure of the Plaintiffs' house. Defendant then

2

Copy

made a determination that there is no physical loss to the covered property and therefore, excluded coverage for the claim. A copy of this correspondence is attached as Exhibit 2.

14. On or about August 26, 2013, Defendant failed to acknowledge or cite to the sinkhole collapse coverage that the Plaintiffs have under their Policy.

15. On or about September 30, 2013, Plaintiffs, through counsel, sent a request that the full amount be paid or that Plaintiffs would seek a bad faith penalty for the handing of their claim. A copy of this correspondence is attached as Exhibit 3.

16. On or about October 10, 2013, Defendant sent correspondence stating that they would "conduct a peer review of the initial report" and would "follow up" with Plaintiffs' counsel once a review was completed and coverage was assessed and confirmed. A copy of this correspondence is attached as Exhibit 4.

17. On or about October 23, 2013, Plaintiffs, through counsel, sent an additional request that Defendant provide a timeframe for when the additional review would be completed. A copy of this correspondence is attached as Exhibit 5.

18. On or about November 27, 2013, almost two months after the initial request was made, a representative from SDII Global Corporation called Plaintiffs, even though Plaintiffs are represented by counsel, and stated that Defendant had hired it to conduct an additional investigation of the Property.

19. A representative from SDII Global Corporation came to Plaintiffs' Property on December 11, 2013, but no actual testing was completed. Further, a representative from SDII Global Corporation stated that a peer review had been completed in October 2013 and was previously provided to Defendant. This peer review was never provided to Plaintiffs and as of the date of this filing, Defendant has not responded to Plaintiffs' correspondence of October 23,

3

Copy

2013, even though it is now apparent that Defendant had a peer review and/or report on or about this time.

20. More than 60 days has passed since Plaintiffs demanded payment and as of the date of this filing, there has been no response from Defendant that the claim will be paid and no payment has been made on the claim. Plaintiffs have complied fully with all of the provisions of the Policy, but Defendant has refused to make a full payment to Plaintiffs for the loss and damage sustained.

21. Plaintiffs have been required to retain the services of the undersigned counsel and are obligated to pay them a reasonable fee for their services.

## BREACH OF CONTRACT

22. Plaintiffs adopt, and incorporate by reference the allegations contained in paragraphs 1 through 21 above as though fully set forth herein.

23. Defendant has breached the Policy by denying coverage for a covered loss and failing and refusing to pay all benefits due thereunder for the claim of confirmed sinkhole activity.

24. Defendant failed to exercise the skill, care and knowledge required of a licensed insurance carrier with respect to the investigation and handling of this claim.

25. Defendant failed to investigate the Plaintiffs' claims in a prompt and thorough manner.

26. Defendant failed to properly investigate the Property as required under the Policy and by state statute.

27. Defendant intentionally ignored Plaintiffs' requests to pay the Plaintiffs' claims and has attempted to delay the processing of the claim.

4

Copy

28.     Defendant represented to its insured that it would pay for damages related to sinkhole losses, but has now refused to pay anything or to even respond timely. Such acts or omissions were committed intentionally, recklessly, and/or negligently.

29.     Defendant owes Plaintiffs prejudgment interest, expert fees, costs, the costs of all structurally necessary repairs, and, if the home is not repairable within applicable coverage limits, an amount equal to such limits for the total constructive loss.

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

30.     Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 29 above as though fully set forth therein.

31.     Defendant has breached the covenant of good faith and fair dealing that is a part of the Policy that it made with the Plaintiffs.

32.     Defendant has evaded the spirit of the bargain with the Plaintiffs, has shown a lack of diligence and slacking off with regards to investigation of the claim and performing under the Policy, and has willfully rendered imperfect performance under the Policy.

### FRAUD AND MISREPRESENTATION

33.     Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 32 above as though fully set forth herein.

34.     Defendant committed fraud by intentionally or recklessly misrepresenting to the insured Plaintiffs that it would cover the damage to Plaintiffs' home for sinkhole losses and then refusing to make payment. Further, Defendant represented that it would conduct an additional peer review yet continued to delay and failed to respond. Such misrepresentation was committed knowingly or recklessly for the purpose of taking undue advantage of the insured and was justifiably relied on by the insured, who accepted the representation as true.

5



## UNFAIR CLAIMS PRACTICES

35.   Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 34 above as though fully set forth herein.

36.   Defendant committed unfair claims practices in violation of Tenn. Code Ann. §§ 56-8-101 through 56-8-111, including, but not limited to:

     (A)   Failing to make a good faith attempt to effect prompt, fair, and equitable payment of Plaintiffs' claim, in violation of Tenn. Code Ann. § 56-8-105; and

     (B)   Refusing to pay Plaintiffs' claim without conducting reasonable investigation in violation of Tenn. Code Ann. § 56-8-105; and

     (C)   Knowingly misrepresenting relevant Policy provisions relating to coverages at issue in violation of Tenn. Code Ann. § 56-8-105.

37.   The Defendant's acts and/or omissions regarding this claim were made willfully or knowingly.  While this is not a separate cause of action, Plaintiffs put Defendant on notice that evidence of these acts will be presented in this lawsuit.

## NEGLIGENCE *PER SE*

38.   Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 37 above as though fully set forth therein.

39.   Defendant failed to follow the minimum standards for investigating a sinkhole claim as set forth in Tenn. Code Ann. § 56-7-130 (d).

40.   The Defendant's acts and/or omissions regarding this claim were made willfully or knowingly.

41.   As a result of Defendant's failure to perform its statutory duty, Plaintiffs have been injured.  Plaintiffs were within the protection of the Tenn. Code Ann. § 56-7-130 and §§ 56-8-101 through 56-8-111, and was intended to benefit from these laws.

6



## STATUTORY BAD FAITH AND COMMON LAW BAD FAITH

42.    Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 41 above as though fully set forth therein.

43.    Defendant's failure and refusal to pay is not in good faith, and such failure to pay has inflicted expense, loss, and injury upon Plaintiffs. Accordingly, Plaintiffs are entitled to recover, in addition to the amount of the insured loss and interest thereon, an amount equal to twenty-five percent (25%) of the liability for the loss, pursuant to Tenn. Code Ann. § 56-7-105.

44.    The acts and/or omissions of Defendant constitute bad faith with respect to the exercise of its duties and obligations to the Plaintiffs, including, but not limited to:

(A)    Defendant failed to exercise the skill, care and knowledge required of a licensed insurance carrier with respect to the investigation and handling of claims;

(B)    Defendant failed to investigate the Plaintiffs' claims in a prompt and thorough manner;

(C)    Defendant intentionally ignored requests to pay the claim of insurance policy coverage for the Plaintiffs' claims; and,

(D)    Defendant represented to its insured that it would pay for sinkhole losses, when the Defendant knew or should have known that it was not planning to pay for these types of claims.

Such acts or omissions were committed intentionally, recklessly and negligently.

45.    Defendant has exhibited a pattern of conduct with regard to its claims handling practices, which has resulted in repeated misconduct amounting to intentional or reckless bad faith toward its insureds. A history of court determinations and complaints of bad faith conduct on the part of Defendant has put Defendant on notice that its claims handling practices have resulted in repeated incidents of bad faith. In spite of such notice, Defendant has intentionally or recklessly or carelessly failed to correct its corporate policies or otherwise train its personnel in such a manner as to reduce or eliminate the misconduct.

7

Copy

WHEREFORE, Plaintiffs respectfully request the Court to enter judgment against Defendant for (i) actual damages; (ii) costs, including expert fees; (iii) reasonable attorneys' fees; (iv) all general and special damages, including but not limited to the full cost of repair or replacement of Plaintiffs' home; (v) pre-judgment interest; (vi) punitive damages; and (vii) any other relief as the Court deems just and appropriate. Plaintiffs pray for all relief and damages to which they are entitled under the common law, including compensatory damages, attorney fees, and costs in an amount to be decided by a jury.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury of twelve (12) persons to try all issues so triable in this matter and such further and general relief to which they may be entitled.

Respectfully submitted,

Sonya S. Wright (BPR 023898)
Hagan & Farrar, PLLC
106 N. Church Street
Murfreesboro, TN 37130
(615) 800-4747, telephone
(615) 900-3473, facsimile
sonya@haganfarrar.com

*Counsel for Plaintiffs*

8

Copy



The Hanover Insurance Group®

FILED

2013 DEC 27 PM 12: 11

RICHARD A. ROOKER, CLERK

D.C.

The undersigned, June Hanlan , Records Service Coordinator for the Hanover Insurance Company, hereby certifies that the attached is an accurate reproduction of the declaration ( s ) and policy forms as produced by the Massachusetts Bay Ins Co. for policy # HV5 9579040 effective 08/03/12 to 08/03/13 from microfiche.

*June Hanlan*
Records Service Coordinator



EXHIBIT
1

Copy

440 Lincoln Street
Worcester, Ma 01653

# The Hanover Insurance Group

October 8, 2013

CLAIM # 15 – 114700

Attn: Candie Weiss

This is the new business for policy # HV5 9579040 effective 08/03/12 to 08/03/13 that you requested.

If you have any questions please call me at 1-508-855-2087

Kathy Boulanger

Records Service Coordinator

Copy



DECLARATION

# AC

H O M E O W N E R S   P O L I C Y

| POLICY NUMBER | POLICY PERIOD FROM | TO | COVERAGE IS PROVIDED IN THE | AGENCY CODE |
|---|---|---|---|---|
| HV5 9579040 | 08/03/12 | 08/03/13 | MASSACHUSETTS BAY INSURANCE CO | 180242900 |

| NAMED INSURED AND ADDRESS | AGENT |
|---|---|
| SHANE DECKER<br>ALYSON DECKER<br>520 SCOTTS CREEK TRL<br>HERMITAGE, TN 37076 | TELEPHONE: 866-873-1609<br>IRVIN-DYAL & BROWN INS.<br>PL HANOVER CSC<br>3326 ASPEN GROVE DR, #100<br>FRANKLIN, TN 37067 |

POLICY PERIOD- 12:01 A.M. STANDARD TIME AT THE RESIDENCE PREMISES

THE PREMISES COVERED BY THIS POLICY IS LOCATED AT THE ABOVE ADDRESS.

| CONSTRUCTION | PREM. GROUP | NO. OF FAM. | TERR. | PROT. CODE | YR. CONST. | SECTION I LOSS DEDUCTIBLE | SEAS/SEC |
|---|---|---|---|---|---|---|---|
| FRAME | 184 | 1 | 25 | 01 | 05 | $1000 PER OCCURRENCE | NO |

COVERAGE IS PROVIDED WHERE A PREMIUM OR A LIMIT OF LIABILITY IS SHOWN

| SECTION I COVERAGE | LIMIT OF LIABILITY | PREMIUMS |
|---|---|---|
| A. DWELLING | $193,000 | $1,233.00 |
| B. OTHER STRUCTURES | $19,300 | |
| C. PERSONAL PROPERTY | $144,750 | |
| D. LOSS OF USE | $57,900 | |
| SECTION II COVERAGE | | |
| E. PERSONAL LIABILITY | $300,000 EACH OCCURRENCE | |
| F. MEDICAL PAY. TO OTHERS - | $2,000 EACH PERSON | $16.00 |
| TOTAL BASIC PREMIUM - - - - - - - - - - - - | | $1,249.00 |

| CREDIT FOR BEING LOSS FREE | $0.00 |
|---|---|

| ADDITIONAL PREMIUMS | |
|---|---|
| HO-3 SELECT PLUS | $101.00 |
| TOTAL ADDITIONAL PREMIUMS - - - - - - - - - - | $101.00 |

| RATING CREDITS | |
|---|---|
| OPTIONAL DEDUCTIBLE | $74.00CR |
| GROUP OR SELECT | $222.00CR |
| TOTAL RATING CREDITS | $296.00CR |

VALUED CUSTOMER CREDITS
CREDIT FOR PROTECTIVE DEVICES
NEW HOME DISCOUNT
NON-SMOKER DISCOUNT 1% CREDIT
25% CREDIT FOR INSURING BOTH YOUR AUTO AND HOME WITH US

| MAXIMUM CREDIT ALLOWED | $493.00CR |
|---|---|
| TOTAL CREDITS - - - - - - - - - - - - - - - - | $789.00CR |
| TOTAL PREMIUM ADJUSTMENTS - - - - - - - - - - - | $688.00CR |
| TOTAL ANNUAL PREMIUM - - - - - - - - - - - - - | $561.00 |

MORTGAGEE
FIRST HORIZON HOME LOAN
ISAOA LN#0053375671
PO BOX 7481
SPRINGFIELD, OH 45501

08/15/12

CONTINUED ON NEXT PAGE
1084237133
ORIGINAL/INSURED

ESCROW BILLED
PAGE 01 OF 02

Case 3:14-cv-00156   Document 1-1   Filed 01/21/14   Page 12 of 78 PageID #: 16

Copy

31        DECLARATION        # AC

H O M E O W N E R S   P O L I C Y

| POLICY NUMBER | POLICY PERIOD | | COVERAGE IS PROVIDED IN THE | AGENCY CODE |
| | FROM | TO | | |
| HV5  9579040 | 08/03/12 | 08/03/13 | MASSACHUSETTS BAY INSURANCE CO | 180242900 |

NAMED INSURED AND ADDRESS                    AGENT

```
SHANE DECKER                        TELEPHONE: 866-873-1609
ALYSON DECKER                       IRVIN-DYAL & BROWN INS.
520 SCOTTS CREEK TRL                PL HANOVER CSC
HERMITAGE, TN  37076                3326 ASPEN GROVE DR, #100
                                    FRANKLIN, TN  37067
```

```
FORMS AND ENDORSEMENTS - HO0003 04/91*, HO0496 04/91*, 231-0600 08/98*,
   231-1340 12/91*, 231-1529 02/94*, 231-1997 02/03*, 231-2698 08/09*,
   231-2708 07/08*, 231-2364 06/06*, 231-2745 09/09*, 231-2323 06/06*,
   231-2324 06/06*, HO0453 04/91*, 231-2326 06/06*, 231-2325 06/06*,
   231-2328 06/06*, HO0435 04/91*, 231-2235 12/05*, HO0490 04/91*,
   231-2341 06/06*, 231-2331 06/06*, 231-1937 01/01*, HO2482 04/91*,
   HO0477 06/94*, 231-5760 03/09*, 231-2421 09/09*, 391-0565 01/83*.
```

DESCRIPTION OF ADDITIONAL COVERAGES

THIS POLICY PROVIDES SINKHOLE LOSS COVERAGE

LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE
(HO-3) - SECTION I ONLY

YOUR POLICY INCLUDES A 0% LOSS SURCHARGE/CREDIT.

CREDIT FOR PROTECTIVE DEVICES                    PERCENTAGE IS 05

AUTHORIZED COMPANY REPRESENTATIVE
IRVIN-DYAL & BROWN INS.

IF THE BILL FOR YOUR POLICY IS NOT ENCLOSED, IT WILL BE SENT TO YOU SEPARATELY.

08/15/12                    1084237133                ESCROW BILLED
                         ORIGINAL/INSURED             PAGE 02 OF 02

Case 3:14-cv-00156   Document 1-1   Filed 01/21/14   Page 13 of 78 PageID #: 17

Copy



ALLMERICA FINANCIAL®
HANOVER INSURANCE®

## HOMEOWNERS 3
## SPECIAL FORM

### AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

### DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

2. "Business" includes trade, profession or occupation.

3. "Insured" means you and residents of your household who are:

   a. Your relatives; or

   b. Other persons under the age of 21 and in the care of any person named above.

   Under Section II, "insured" also means:

   c. With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3.a. or 3.b. above. A person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner is not an "insured";

   d. With respect to any vehicle to which this policy applies:

      (1) Persons while engaged in your employ or that of any person included in 3.a. or 3.b. above; or

      (2) Other persons using the vehicle on an "insured location" with your consent.

4. "Insured location" means:

   a. The "residence premises";

   b. The part of other premises, other structures and grounds used by you as a residence and:

      (1) Which is shown in the Declarations; or

      (2) Which is acquired by you during the policy period for your use as a residence;

   c. Any premises used by you in connection with a premises in 4.a. and 4.b. above;

d. Any part of a premises:

   (1) Not owned by an "insured"; and

   (2) Where an "insured" is temporarily residing;

e. Vacant land, other than farm land, owned by or rented to an "insured";

f. Land owned by or rented to an "insured" on which a one or two family dwelling is being built as a residence for an "insured";

g. Individual or family cemetery plots or burial vaults of an "insured"; or

h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

5. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   a. "Bodily injury"; or

   b. "Property damage."

6. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

7. "Residence employee" means:

   a. An employee of an "insured" whose duties are related to the maintenance or use of the "residence premises," including household or domestic services; or

   b. One who performs similar duties elsewhere not related to the "business" of an "insured."

8. "Residence premises" means:

   a. The one family dwelling, other structures, and grounds; or

   b. That part of any other building;

   where you reside and which is shown as the "residence premises" in the Declarations.

   "Residence premises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.

Case 4:14-cv-00156   Document 1-4   Filed 02/11/14   Page 14 of 78 PageID #: 88

Copy

## SECTION I - PROPERTY COVERAGES

### COVERAGE A - Dwelling

We cover:

1. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

2. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises."

This coverage does not apply to land, including land on which the dwelling is located.

### COVERAGE B - Other Structures

We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located.

We do not cover other structures:

1. Used in whole or in part for "business"; or

2. Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

### COVERAGE C - Personal Property

We cover personal property owned or used by an "insured" while it is anywhere in the world. At your request, we will cover personal property owned by:

1. Others while the property is on the part of the "residence premises" occupied by an "insured";

2. A guest or a "residence employee," while the property is in any residence occupied by an "insured."

Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises," is 10% of the limit of liability for Coverage C, or $1000, whichever is greater. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Limits of Liability.** These limits do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.

2. $1000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.

3. $1000 on watercraft, including their trailers, furnishings, equipment and outboard engines or motors.

4. $1000 on trailers not used with watercraft.

5. $1000 for loss by theft of jewelry, watches, furs, precious and semi-precious stones.

6. $2000 for loss by theft of firearms.

7. $2500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

8. $2500 on property, on the "residence premises," used at any time or in any manner for any "business" purpose.

9. $250 on property, away from the "residence premises," used at any time or in any manner for any "business" purpose. However, this limit does not apply to loss to adaptable electronic apparatus as described in Special Limits 10. and 11. below.

10. $1000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:

    a. Accessories or antennas; or

    b. Tapes, wires, records, discs or other media;

    for use with any electronic apparatus.

Copyright, Insurance Services Office, Inc., 1990

Copy



11. $1000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

a. Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

b. Is away from the "residence premises"; and

c. Is used at any time or in any manner for any "business" purpose.

Electronic apparatus includes:

a. Accessories and antennas; or

b. Tapes, wires, records, discs or other media;

for use with any electronic apparatus.

**Property Not Covered.** We do not cover:

1. Articles separately described and specifically insured in this or other insurance;

2. Animals, birds or fish;

3. Motor vehicles or all other motorized land conveyances. This includes:

a. Their equipment and accessories; or

b. Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

(1) Accessories or antennas; or

(2) Tapes, wires, records, discs or other media;

for use with any electronic apparatus.

The exclusion of property described in 3.a. and 3.b. above applies only while the property is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

a. Used to service an "insured's" residence; or

b. Designed for assisting the handicapped;

4. Aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

5. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

6. Property in an apartment regularly rented or held for rental to others by an "insured," except as provided in Additional Coverages 10.;

7. Property rented or held for rental to others off the "residence premises";

8. "Business" data, including such data stored in:

a. Books of account, drawings or other paper records; or

b. Electronic data processing tapes, wires, records, discs or other software media;

However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market; or

9. Credit cards or fund transfer cards except as provided in Additional Coverages 6.

**COVERAGE D - Loss Of Use**

The limit of liability for Coverage D is the total limit for all the coverages that follow.

1. If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover, at your choice, either of the following. However, if the "residence premises" is not your principal place of residence, we will not provide the option under paragraph b. below.

a. **Additional Living Expense,** meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living; or

b. **Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" where you reside less any expenses that do not continue while the premises is not fit to live in.

Payment under a. or b. will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

2. If a loss covered under this Section makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the:

Fair Rental Value, meaning the fair rental value of that part of the "residence premises" rented to others or held for rental by you less any expenses that do not continue while the premises is not fit to live in.

Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

3. If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense and Fair Rental Value loss as provided under 1. and 2. above for no more than two weeks.

Case 1:14-cv-00156 Document 1-1 Filed 12/11/14 in Page 16 of 78 PageID #: 23

Copy

The periods of time under 1., 2. and 3. above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

**ADDITIONAL COVERAGES**

1. **Debris Removal.** We will pay your reasonable expense for the removal of:

   a. Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

   b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

   This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

   We will also pay your reasonable expense, up to $500, for the removal from the "residence premises" of:

   a. Your tree(s) felled by the peril of Windstorm or Hail;

   b. Your tree(s) felled by the peril of Weight of Ice, Snow or Sleet; or

   c. A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

   provided the tree(s) damages a covered structure. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

   This coverage:

   a. Does not increase the limit of liability that applies to the covered property;

   b. Does not relieve you of your duties, in case of a loss to covered property, as set forth in SECTION I - CONDITION 2.d.

3. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the "residence premises," for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the "residence premises," Vandalism or malicious mischief or Theft.

   We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

   This coverage is additional insurance.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

   This coverage is additional insurance. No deductible applies to this coverage.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6. **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

   We will pay up to $500 for:

   a. The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

   b. Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

   c. Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

   d. Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

Copy



We do not cover use of a credit card or fund transfer card:

a. By a resident of your household;

b. By a person who has been entrusted with either type of card; or

c. If an "insured" has not complied with all terms and conditions under which the cards are issued.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of "business" use or dishonesty of an "insured."

This coverage is additional insurance. No deductible applies to this coverage.

Defense:

a. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

b. If a suit is brought against an "insured" for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

c. We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under COVERAGE A - DWELLING, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

The limit of $1000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

Condition 1. Policy Period, under SECTIONS I AND II CONDITIONS, does not apply to this coverage.

8. **Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

a. Perils Insured Against in COVERAGE C - PERSONAL PROPERTY. These perils apply to covered buildings and personal property for loss insured by this additional coverage;

b. Hidden decay;

c. Hidden insect or vermin damage;

d. Weight of contents, equipment, animals or people;

e. Weight of rain which collects on a roof; or

f. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e., and f. unless the loss is a direct result of the collapse of a building.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This coverage does not increase the limit of liability applying to the damaged covered property.

9. **Glass or Safety Glazing Material.**

We cover:

a. The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

b. Damage to covered property by glass or safety glazing material which is part of a building, storm door or storm window.

This coverage does not include loss on the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

Loss for damage to glass will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

This coverage does not increase the limit of liability that applies to the damaged property.

 Copyright, Insurance Services Office, Inc., 1990

Copy

10. **Landlord's Furnishings.** We will pay up to $2500 for your appliances, carpeting and other household furnishings, in an apartment on the "residence premises" regularly rented or held for rental to others by an "insured," for loss caused only by the following Perils Insured Against:

a. **Fire or lightning.**

b. **Windstorm or hail.**

   This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

c. **Explosion.**

d. **Riot or civil commotion.**

e. **Aircraft,** including self-propelled missiles and spacecraft.

f. **Vehicles.**

g. **Smoke,** meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

h. **Vandalism or malicious mischief.**

i. **Falling objects.**

   This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

j. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

k. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

This peril does not include loss:

   (1) To the system or appliance from which the water or steam escaped;

   (2) Caused by or resulting from freezing except as provided in the peril of freezing below; or

   (3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."

   In this peril, a plumbing system does not include a sump, sump pump or related equipment.

l. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

   We do not cover loss caused by or resulting from freezing under this peril.

m. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

   This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:

   (1) Maintain heat in the building; or

   (2) Shut off the water supply and drain the system and appliances of water.

n. **Sudden and accidental damage from artificially generated electrical current.**

   This peril does not include loss to a tube, transistor or similar electronic component.

o. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

The $2500 limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

---

## SECTION I - PERILS INSURED AGAINST

### COVERAGE A - DWELLING and COVERAGE B - OTHER STRUCTURES

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not insure, however, for loss:

1. Involving collapse, other than as provided in Additional Coverage 8.;

2. Caused by:

Copy


ALLMERICA FINANCIAL
HANOVER INSURANCE

a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

(1) Maintain heat in the building; or

(2) Shut off the water supply and drain the system and appliances of water;

b. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

(1) Fence, pavement, patio or swimming pool;

(2) Foundation, retaining wall, or bulkhead; or

(3) Pier, wharf or dock;

c. Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

d. Vandalism and malicious mischief if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

e. Any of the following:

(1) Wear and tear, marring, deterioration;

(2) Inherent vice, latent defect, mechanical breakdown;

(3) Smog, rust or other corrosion, mold, wet or dry rot;

(4) Smoke from agricultural smudging or industrial operations;

(5) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

(6) Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings;

(7) Birds, vermin, rodents, or insects; or

(8) Animals owned or kept by an "insured."

If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

3. Excluded under Section I - Exclusions.

Under items 1. and 2., any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

COVERAGE C - PERSONAL PROPERTY

We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in SECTION I - EXCLUSIONS.

1. Fire or lightning.

2. Windstorm or hail.

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

3. Explosion.

4. Riot or civil commotion.

5. Aircraft, including self-propelled missiles and spacecraft.

6. Vehicles.

7. Smoke, meaning sudden and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. Vandalism or malicious mischief.

9. Theft, including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

This peril does not include loss caused by theft:

a. Committed by an "insured";

b. In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied; or

Copy

c. From that part of a "residence premises" rented by an "insured" to other than an "insured."

This peril does not include loss caused by theft that occurs off the "residence premises" of:

a. Property while at any other residence owned by, rented to, or occupied by an "insured," except while an "insured" is temporarily living there. Property of a student who is an "insured" is covered while at a residence away from home if the student has been there at any time during the 45 days immediately before the loss;

b. Watercraft, and their furnishings, equipment and outboard engines or motors; or

c. Trailers and campers.

10. Falling objects.

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. Weight of ice, snow or sleet which causes damage to property contained in a building.

12. Accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

This peril does not include loss:

a. To the system or appliance from which the water or steam escaped;

b. Caused by or resulting from freezing except as provided in the peril of freezing below; or

c. On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."

In this peril, a plumbing system does not include a sump, sump pump or related equipment.

13. Sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

14. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:

a. Maintain heat in the building; or

b. Shut off the water supply and drain the system and appliances of water.

15. Sudden and accidental damage from artificially generated electrical current.

This peril does not include loss to a tube, transistor or similar electronic component.

16. Volcanic eruption other than loss caused by earthquake, land shock waves or tremors.

## SECTION I - EXCLUSIONS

1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

   a. Ordinance or Law, meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or other structure, unless specifically provided under this policy.

   b. Earth Movement, meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:

      (1) Fire;

      (2) Explosion; or

      (3) Breakage of glass or safety glazing material which is part of a building, storm door or storm window;

      ensues and then we will pay only for the ensuing loss.

      This exclusion does not apply to loss by theft.

   c. Water Damage, meaning:

      (1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

      (2) Water which backs up through sewers or drains or which overflows from a sump; or

Copy



ALLMERICA FINANCIAL®
HANOVER INSURANCE®

(3) Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

Direct loss by fire, explosion or theft resulting from water damage is covered.

d. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises." But, if a Peril Insured Against ensues on the "residence premises," we will pay only for that ensuing loss.

e. **Neglect,** meaning neglect of the "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

f. **War,** including the following and any consequence of any of the following:

(1) Undeclared war, civil war, insurrection, rebellion or revolution;

(2) Warlike act by a military force or military personnel; or

(3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

g. **Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of SECTION I – CONDITIONS.

h. **Intentional Loss,** meaning any loss arising out of any act committed:

(1) By or at the direction of an "insured"; and

(2) With the intent to cause a loss.

2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

a. **Weather conditions.** However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss;

b. **Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body;

c. **Faulty, inadequate or defective:**

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property whether on or off the "residence premises."

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

a. To the "insured" for more than the amount of the "insured's" interest at the time of loss; or

b. For more than the applicable limit of liability.

2. **Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:

a. Give prompt notice to us or our agent;

b. Notify the police in case of loss by theft;

c. Notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverage;

d. Protect the property from further damage. If repairs to the property are required, you must:

(1) Make reasonable and necessary repairs to protect the property; and

(2) Keep an accurate record of repair expenses;

e. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

f. As often as we reasonably require:

(1) Show the damaged property;

(2) Provide us with records and documents we request and permit us to make copies; and

(3) Submit to examination under oath, while not in the presence of any other "insured," and sign the same;

Case 3:14-cv-00156 Document 1-1 Filed 01/21/14 Page 22 of 78 PageID #: 26

Copy

g. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

(1) The time and cause of loss;

(2) The interest of the "insured" and all others in the property involved and all liens on the property;

(3) Other insurance which may cover the loss;

(4) Changes in title or occupancy of the property during the term of the policy;

(5) Specifications of damaged buildings and detailed repair estimates;

(6) The inventory of damaged personal property described in 2.e. above;

(7) Receipts for additional living expenses incurred and records that support the fair rental value loss; and

(8) Evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss Settlement.** Covered property losses are settled as follows:

   a. Property of the following types:

   (1) Personal property;

   (2) Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

   (3) Structures that are not buildings;

   at actual cash value at the time of loss but not more than the amount required to repair or replace.

   b. Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

   (1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

   (a) The limit of liability under this policy that applies to the building;

   (b) The replacement cost of that part of the building damaged for like construction and use on the same premises; or

   (c) The necessary amount actually spent to repair or replace the damaged building.

   (2) If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

   (a) The actual cash value of that part of the building damaged; or

   (b) That proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

   (3) To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

   (a) Excavations, foundations, piers or any supports which are below the undersurface of the lowest basement floor;

   (b) Those supports in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

   (c) Underground flues, pipes, wiring and drains.

   (4) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of b.(1) and b.(2) above.

   However, if the cost to repair or replace the damage is both:

   (a) Less than 5% of the amount of insurance in this policy on the building; and

   (b) Less than $2500;

   we will settle the loss according to the provisions of b.(1) and b.(2) above whether or not actual repair or replacement is complete.

Copy


ALLMERICA FINANCIAL®
HANOVER INSURANCE®

(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability according to the provisions of this Condition 3. Loss Settlement.

4. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

   a. Repair or replace any part to restore the pair or set to its value before the loss; or

   b. Pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

   Each party will:

   a. Pay its own appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

9. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

    a. Reach an agreement with you;

    b. There is an entry of a final judgment; or

    c. There is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by an "insured."

12. **Mortgage Clause.**

    The word "mortgagee" includes trustee.

    If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

    If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

    a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

    b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

    c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

    If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

    If we pay the mortgagee for any loss and deny payment to you:

    a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

    b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

    Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

Case 3:14-cv-00156 Document 1-1 Filed 05/21/14 Page 24 of 78 PageID #: 26

Copy

13. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

14. **Nuclear Hazard Clause.**

   a. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

   b. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in Section I.

   c. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

15. **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

16. **Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

## SECTION II - LIABILITY COVERAGES

### COVERAGE E - Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

### COVERAGE F - Medical Payments To Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury." Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees." As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location," if the "bodily injury":

   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

   b. Is caused by the activities of an "insured";

   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

   d. Is caused by an animal owned by or in the care of an "insured."

## SECTION II - EXCLUSIONS

1. **Coverage E - Personal Liability** and **Coverage F - Medical Payments to Others** do not apply to "bodily injury" or "property damage":

   a. Which is expected or intended by the "insured";

   b. Arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";

Copy



c. Arising out of the rental or holding for rental of any part of any premises by an "insured." This exclusion does not apply to the rental or holding for rental of an "insured location":

(1) On an occasional basis if used only as a residence;

(2) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(3) In part, as an office, school, studio or private garage;

d. Arising out of the rendering of or failure to render professional services;

e. Arising out of a premises:

(1) Owned by an "insured";

(2) Rented to an "insured"; or

(3) Rented to others by an "insured";

that is not an "insured location";

f. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured";

(2) The entrustment by an "insured" of a motor vehicle or any other motorized land conveyance to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

This exclusion does not apply to:

(1) A trailer not towed by or carried on a motorized land conveyance.

(2) A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

(a) Not owned by an "insured"; or

(b) Owned by an "insured" and on an "insured location";

(3) A motorized golf cart when used to play golf on a golf course;

(4) A vehicle or conveyance not subject to motor vehicle registration which is:

(a) Used to service an "insured's" residence;

(b) Designed for assisting the handicapped; or

(c) In dead storage on an "insured location";

g. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of an excluded watercraft described below;

(2) The entrustment by an "insured" of an excluded watercraft described below to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an excluded watercraft described below.

Excluded watercraft are those that are principally designed to be propelled by engine power or electric motor, or are sailing vessels, whether owned by or rented to an "insured." This exclusion does not apply to watercraft:

(1) That are not sailing vessels and are powered by:

(a) Inboard or inboard-outdrive engine or motor power of 50 horsepower or less not owned by an "insured";

(b) Inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to an "insured";

(c) One or more outboard engines or motors with 25 total horsepower or less;

(d) One or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by an "insured";

(e) Outboard engines or motors of more than 25 total horsepower owned by an "insured" if:

(i) You acquire them prior to the policy period; and

(a) You declare them at policy inception; or

(b) Your intention to insure is reported to us in writing within 45 days after you acquire the outboard engines or motors.

(ii) You acquire them during the policy period.

This coverage applies for the policy period.

(2) That are sailing vessels, with or without auxiliary power:

(a) Less than 26 feet in overall length;

(b) 26 feet or more in overall length, not owned by or rented to an "insured."

Copy

(3) That are stored;

h. Arising out of:

  (1) The ownership, maintenance, use, loading or unloading of an aircraft;

  (2) The entrustment by an "insured" of an aircraft to any person; or

  (3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an aircraft.

An aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

i. Caused directly or indirectly by war, including the following and any consequence of any of the following:

  (1) Undeclared war, civil war, insurrection, rebellion or revolution;

  (2) Warlike act by a military force or military personnel; or

  (3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

j. Which arises out of the transmission of a communicable disease by an "insured";

k. Arising out of sexual molestation, corporal punishment or physical or mental abuse; or

l. Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions e., f., g., and h. do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured."

2. **Coverage E - Personal Liability**, does not apply to:

a. Liability:

  (1) For any loss assessment charged against you as a member of an association, corporation or community of property owners;

b. To any person eligible to receive benefits:

  (1) Voluntarily provided; or

---

  (2) Under any contract or agreement. However, this exclusion does not apply to written contracts:

    (a) That directly relate to the ownership, maintenance or use of an "insured location"; or

    (b) Where the liability of others is assumed by the "insured" prior to an "occurrence";

  unless excluded in (1) above or elsewhere in this policy;

b. "Property damage" to property owned by the "insured";

c. "Property damage" to property rented to, occupied or used by or in the care of the "insured." This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

d. "Bodily injury" to any person eligible to receive any benefits:

  (1) Voluntarily provided; or

  (2) Required to be provided;

  by the "insured" under any:

  (1) Workers' compensation law;

  (2) Non-occupational disability law; or

  (3) Occupational disease law;

e. "Bodily injury" or "property damage" for which an "insured" under this policy:

  (1) Is also an insured under a nuclear energy liability policy; or

  (2) Would be an insured under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by:

  (1) American Nuclear Insurers;

  (2) Mutual Atomic Energy Liability Underwriters;

  (3) Nuclear Insurance Association of Canada;

  or any of their successors; or

f. "Bodily injury" to you or an "insured" within the meaning of part a. or b. of "insured" as defined.

3. **Coverage F - Medical Payments to Others**, does not apply to "bodily injury":

a. To a "residence employee" if the "bodily injury":

  (1) Occurs off the "insured location"; and

  (2) Does not arise out of or in the course of the "residence employee's" employment by an "insured";

  (2) Required to be provided;

  under any:

Copy


ALLMERICA FINANCIAL®
HANOVER INSURANCE®

(1) Workers' compensation law;

(2) Non-occupational disability law; or

(3) Occupational disease law;

c. From any:

(1) Nuclear reaction;

(2) Nuclear radiation; or

(3) Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

(4) Any consequence of any of these; or

d. To any person, other than a "residence employee" of an "insured," regularly residing on any part of the "insured location."

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. Claim Expenses. We pay:

   a. Expenses we incur and costs taxed against an "insured" in any suit we defend;

   b. Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;

   c. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to \$50 per day, for assisting us in the investigation or defense of a claim or suit; and

   d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. First Aid Expenses. We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to you or any other "insured."

3. Damage to Property of Others. We will pay, at replacement cost, up to \$500 per "occurrence" for "property damage" to property of others caused by an "insured."

   We will not pay for "property damage":

   a. To the extent of any amount recoverable under Section I of this policy;

   b. Caused intentionally by an "insured" who is 13 years of age or older;

   c. To property owned by an "insured";

   d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

   We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

   Regardless of the number of assessments, the limit of \$1000 is the most we will pay for loss arising out of:

e. Arising out of:

   (1) A "business" engaged in by an "insured";

   (2) Any act or omission in connection with a premises owned, rented or controlled by an "insured," other than the "insured location"; or

   (3) The ownership, maintenance, or use of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

      This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an "insured."

4. Loss Assessment. We will pay up to \$1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

   a. "Bodily injury" or "property damage" not excluded under Section II of this policy; or

   b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

      (1) The director, officer or trustee is elected by the members of a corporation or association of property owners; and

      (2) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

   This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

   a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

Copy

b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

The following do not apply to this coverage:

1. Section II - Coverage E - Personal Liability Exclusion 2.a.(1);

2. Condition 1. Policy Period, under SECTIONS I AND II - CONDITIONS.

## SECTION II - CONDITIONS

1. **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of "insureds," claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence."

   Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each "insured." This condition will not increase our limit of liability for any one "occurrence."

3. **Duties After Loss.** In case of an accident or "occurrence," the "insured" will perform the following duties that apply. You will help us by seeing that these duties are performed:

   a. Give written notice to us or our agent as soon as is practical, which sets forth:

      (1) The identity of the policy and "insured";

      (2) Reasonably available information on the time, place and circumstances of the accident or "occurrence"; and

      (3) Names and addresses of any claimants and witnesses;

   b. Promptly forward to us every notice, demand, summons or other process relating to the accident or "occurrence";

6. **Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

   No one will have the right to join us as a party to any action against an "insured." Also, no action with respect to Coverage E can be brought against us until the obligation of the "insured" has been determined by final judgment or agreement signed by us.

   c. At our request, help us:

      (1) To make settlement;

      (2) To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

      (3) With the conduct of suits and attend hearings and trials; and

      (4) To secure and give evidence and obtain the attendance of witnesses;

   d. Under the coverage - Damage to Property of Others - submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the "insured's" control;

   e. The "insured" will not, except at the "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury."

4. **Duties of an Injured Person - Coverage F - Medical Payments to Others.**

   The injured person or someone acting for the injured person will:

   a. Give us written proof of claim, under oath if required, as soon as is practical; and

   b. Authorize us to obtain copies of medical reports and records.

   The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim - Coverage F - Medical Payments to Others.** Payment under this coverage is not an admission of liability by an "insured" or us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

8. **Other Insurance - Coverage E - Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTIONS I AND II - CONDITIONS

Copy


ALLMERICA FINANCIAL®
HANOVER INSURANCE®

1. **Policy Period.** This policy applies only to loss in Section I or "bodily injury" or "properly damage" in Section II, which occurs during the policy period.

2. **Concealment or Fraud.** The entire policy will be void if, whether before or after a loss, an "insured" has:

   a. Intentionally concealed or misrepresented any material fact or circumstance;

   b. Engaged in fraudulent conduct; or

   c. Made false statements;

   relating to this insurance.

3. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

   This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

4. **Waiver or Change of Policy Provisions.**

   A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

5. **Cancellation.**

   a. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

   b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

      Proof of mailing will be sufficient proof of notice.

      (1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

      (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

      (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

         (a) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

         (b) If the risk has changed substantially since the policy was issued.

         This can be done by letting you know at least 30 days before the date cancellation takes effect.

      (4) When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

   c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

   d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

7. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

Copy

**8. Subrogation.** An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

**9. Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

b. "Insured" includes:

(1) Any member of your household who is an "insured" at the time of your death, but only while a resident of the "residence premises"; and

(2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

Copy



## NO SECTION II - LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS
## LIMITED SECTION I - PROPERTY COVERAGES FOR HOME DAY CARE BUSINESS

If an "insured" regularly provides home day care services to a person or persons other than "insureds" and receives monetary or other compensation for such services, that enterprise is a "business." Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day care services by an "insured" to a relative of an "insured" is not considered a "business."

Therefore, with respect to a home day care enterprise which is considered to be a "business," this policy:

1.  Does not provide Section II - Liability Coverages because a "business" of an "insured" is excluded under exclusion 1.b. of Section II - Exclusions;

2.  Does not provide Section I - Coverage B coverage where other structures are used in whole or in part for "business";

3.  Limits coverage for property used on the "residence premises" for the home day care enterprise to $2,500, because Coverage C - Special Limits of Liability - item 8. imposes that limit on "business" property on the "residence premises." (Item 8. corresponds to item 5. in Form HO 00 08.);

4.  Limits coverage for property used away from the "residence premises" for the home day care enterprise to $250, because Coverage C - Special Limits of Liability - item 9. imposes that limit on "business" property away from the "residence premises." Special Limit of Liability item 9. does not apply to adaptable electronic apparatus as described in Special Limit of Liability - items 10. and 11. (Items 9., 10. and 11. correspond to items 6., 7. and 8. respectively in Form HO 00 08.)

THIS ENDORSEMENT DOES NOT CONSTITUTE A REDUCTION OF COVERAGE.

Copyright, Insurance Services Office, Inc., 1990

HO 04 96 04 91

Copy


ALLMERICA FINANCIAL"
HANOVER INSURANCE"

## INFLATION GUARD ENDORSEMENT

At each anniversary date, the limits shown on the Declarations Page for Coverages A, B, C and D, if applicable, may be changed. The new limits will reflect current costs in the area where the "residence premises" is located. These costs will be based upon data supplied by recognized appraisal firms as well as other internal and external sources.

Increases will be applied quarterly during the policy term. Your limits will never be decreased without your permission. This endorsement does not change the requirements of the coinsurance clause if it applies.

All other provisions of this policy apply.

231-0600 (8-98)





## LEAD POISONING EXCLUSION

Under Section II - Exclusions, Item 2. Coverage E - Personal Liability, Exclusion g. is added:

g.  Bodily injury or property damage caused by an occurrence of lead poisoning arising out of any of the following:
    (1)  Arising from any portion of an insured location;
    (2)  Arising from the appliances, furnishings and fixtures, including plumbing fixtures, owned by an insured and contained in or on a residential dwelling, apartment unit or other structure described in (1) above.

This Exclusion applies separately to each insured location and includes all areas within the boundaries of the location or property including soil. This Exclusion applies to the lead poisoning of any resident, guest, tenant or other person regardless of the age of the resident, guest, tenant or other person and regardless of the age of the building or buildings at the insured location.

231-1340 (12-91)





THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SINKHOLE COLLAPSE

We insure for direct physical loss to property covered under Section I caused by Sinkhole Collapse.

Sinkhole Collapse means actual physical damage arising out of, or caused by, sudden settlement or collapse of the earth supporting such property and only when such settlement or collapse results from subterranean voids created by the action of water on limestone or similar rock formations.

The Section I - Earth Movement exclusion does not apply to Sinkhole Collapse.

All other provisions of this policy apply.

Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1990

231-1529 (2-94)

Copy


ALLMERICA FINANCIAL°
HANOVER INSURANCE°

**THIS, ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE

### FOR USE WITH FORM HO 00 03

## DEFINITIONS

The following definition is added:

**"Fungi"**

a. "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by "fungi".

b. Under **Section II**, this does not include any "fungi" that are, are on, or are contained in, a good or product intended for consumption.

## SECTION I - PROPERTY COVERAGES

### ADDITIONAL COVERAGES

The following Additional Coverage is added:

**11. "Fungi", Wet Or Dry Rot, Or Bacteria**

a. We will pay up to $5,000 for:

(1) The total of all loss payable under **Section I - Property Coverages** caused by or resulting from "fungi", wet or dry rot, or bacteria;

(2) The cost to remove "fungi", wet or dry rot from property covered under **Section I - Property Coverages**;

(3) The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or bacteria; and

(4) The cost of testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or bacteria whether performed prior to, during or after:

    (i)    removal;

    (ii)   repair;

    (iii)  restoration; or

    (iv)  replacement.

The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi", wet or dry rot, or bacteria.

b. The coverage described in **11.a.** only applies:

(1) when such loss or costs are a result of a Peril Insured Against that occurs during the policy period; and

(2) if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

c. The limit of liability in **11.a.** for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage regardless of the:

(1) Number of locations insured under this endorsement; or

(2) Number of claims made.

d. If there is a covered loss or damage to covered property, not caused, in whole or in part, by "fungi", wet or dry rot, or bacteria, loss payment will not be limited by the terms of this Additional Coverage, except to the extent that "fungi", wet or dry rot, or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Additional Coverage.

This coverage does not increase the limit of liability applying to the damaged covered property.

The limit of liability applies to the total of all loss or costs payable under this endorsement per policy period, regardless of:

    a)  the number of "occurrences";

    b)  the number of claims made; or

    c)  the number of locations

insured under this endorsement.

## SECTION I - PERILS INSURED AGAINST

### COVERAGE A - DWELLING AND COVERAGE B - OTHER STRUCTURES

Paragraph 2.e.(3) is deleted and replaced by the following:

(3) Smog, rust or other corrosion;

Paragraph 2.e.(9) is added:

(9) Constant or repeated seepage or leakage of water or the presence or condensation of:

231-1997 (02-03)

Page 1 of 2



(a) humidity;

(b) moisture; or

(c) vapor;

over a period of weeks, months or years.

## COVERAGE C - PERSONAL PROPERTY

Paragraph 12.d. is added:

d. Caused by constant or repeated seepage or leakage of water or the presence or condensation of:

(1) humidity;

(2) moisture; or

(3) vapor;

over a period of weeks, months or years.

In Form HO 00 03 with HO 00 15:

Paragraph 1.b.(4)(c) is deleted and replaced by the following:

(c) Smog, rust or other corrosion;

Paragraph 1.b.(4)(i) is added:

(i) Constant or repeated seepage or leakage of water or the presence or condensation of:

1) humidity;

2) moisture; or

3) vapor;

over a period of weeks, months or years.

## SECTION I - EXCLUSIONS

Exclusion 1.i. is added.

i. "Fungi", Wet Or Dry Rot, Or Bacteria

"Fungi", Wet Or Dry Rot, Or Bacteria meaning the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or bacteria.

This exclusion does not apply:

(1) When "fungi", wet or dry rot, or bacteria results from fire or lightning; or

(2) To the extent coverage is provided for in the "Fungi", Wet Or Dry Rot, Or Bacteria Additional Coverage under **Section I** - Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning.

## SECTION II - EXCLUSIONS

Exclusion 1.m. is added.

1.m. arising out of any "fungi", wet or dry rot, or bacteria meaning the:

(1) presence;

(2) growth;

(3) proliferation;

(4) spread; or

(5) any activity;

of "fungi", wet or dry rot, or bacteria.

This exclusion applies to all locations including those locations otherwise covered by separate endorsement.

We also do not cover, for **Section II**, the cost:

1. of any loss of use or delay in rebuilding, repairing or replacing covered property, including any associated cost of expense, due to interference at the residence premises or location of the rebuilding, repair or replacement by "fungi";

2. to remove "fungi", wet or dry rot, or bacteria from property covered under **Section I**;

3. to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or bacteria; and

4. of testing or monitoring of air or property to confirm the type, absence, presence or level of "fungi", wet or dry rot, or bacteria, whether performed" prior to, during or after removal, repair, restoration or replacement.

## SECTION I AND II - CONDITIONS

Condition 1. **Policy Period** is deleted and replaced with the following:

1. **Policy Period**

This policy applies only to loss or costs in:

a. **Section I** ; or

b. "bodily injury" or "property damage" in Section II;

which occurs during the policy period.

All other provisions of the policy apply.

Case 3:14-cv-00156   Document 1-1   Filed 01/21/14   Page 37 of 78 PageID #: 41





## CONNECTIONS TOTAL HOUSEHOLD REWARDS

This endorsement is a part of your policy. It is effective on the date when both your Personal Auto and Home are insured with the Hanover Insurance Company or one of its affiliated companies.

The coverage provided is deemed terminated effective on the date when either your Personal Auto or Home is no longer insured by the Hanover Insurance Company or one of its affiliated companies.

### A. Certificate of Guaranteed Renewal

This endorsement is a part of your policy unless prohibited by state regulations.

Except for the changes it makes, all other terms and conditions of this policy apply.

We agree that we will not cancel or nonrenew this policy subject to the following conditions.

### Conditions

1. This policy insures:

    a) A Private Passenger Auto, Station Wagon type vehicle, or a pick-up truck or van of the type described in the definition of Your Covered Auto in your policy; or

    b) Your Residence Premises as described in the item titled "Residence Premises" in the DEFINITIONS section of your policy.

2. Premiums are paid when due.

3. This policy is not in cancellation or nonrenewal status at the time this endorsement becomes effective.

4. The Hanover Insurance Company or one of its affiliated companies continues to offer Guaranteed Renewal benefit in your state.

5. Only the current Named Insured or that person's spouse is a Named Insured on this policy.

6. An Insured has not been convicted of insurance fraud or other felony.

7. We determine that there is no adverse material change in risk during the policy term or that the risks and hazards associated with the policy have not changed substantially since the policy was first issued.

8. An Insured has not made fraudulent statements or engaged in fraudulent conduct in obtaining or maintaining this policy, or, in connection with any accident or loss for which coverage is sought under this policy.

9. Your agent is licensed for Personal Auto and Home by the Hanover Insurance Company or one of its affiliates for Personal Auto and Homeowners business.

10. You continue to insure both your Personal Auto and Home with the Hanover Insurance Company or one of its Affiliates.

Failure to meet one or more of these conditions voids this Certificate.

### B. Account Single Loss Deductible

Except for the changes this coverage makes, all other terms and conditions of the policy apply.

If both your Personal Auto and Home are insured with the Hanover Insurance Company or one of its affiliates at the time a single loss incident affects both policies, we will waive the lower of the two deductibles if the amount of the loss to the policy with the higher deductible exceeds the deductible amount.

231-2698 06 09

Case 3:14-cv-00156   Document 1-1   Filed 01/21/14   Page 38 of 78 PageID #: 42



## C. Fire Extinguisher Recharge or Replacement

Except for the changes this coverage makes, all other terms and conditions of the policy apply.

We will pay expenses incurred to recharge or replace a portable fire extinguisher after it is used to fight a fire covered by this policy at the residence premises. If the fire extinguisher cannot be recharged, we will replace it with one of the same or similar size and specifications. No deductible applies to this coverage.

## D. Child Passenger Restraint System Replacement

Except for the changes this coverage makes, all other terms and conditions of the policy apply.

We will pay up to $300 for expenses incurred to replace a child passenger restraint system, if the child passenger restraint system was damaged during an accident that is covered under the policy. No deductible applies to this coverage.

## E. Mortgage Extra Expense Coverage

Except for the changes this coverage makes, all other terms and conditions of the policy apply.

If a covered peril causes a total loss to your dwelling, we will reimburse you for the following costs and expenses incurred within 120 days of the loss to replace the damaged property:

a. Acquisition Costs.

We will pay up to $1,000 for the following direct monetary costs to purchase the replacement property:
   1) Title search fees;
   2) Appraisal fees; and
   3) Application fees.

b. Additional Monthly Mortgage Expense

We will pay that part of the additional monthly mortgage expense on the replacement dwelling which is due to a higher rate of interest. This is based on the balance owed on the original mortgage at the time of loss and for a like term.

Our limit of liability shall not exceed $250 per month for one year from the date of the first payment. Payment under this coverage will be made semi-annually when you provide satisfactory evidence the mortgage for which payment is being made remains in full force and effect. It is also required that proof of the current rate of interest be provided.

The term "total loss" when used in this Mortgage Extra Expense Coverage, means a covered loss to your dwelling for which we have paid or agreed to pay an amount equal to the total limit of liability shown on the Declarations Page for Coverage A - Dwelling.

No deductible applies to this coverage.

All other policy provisions apply.

Case 3:14-cv-00156   Document 1-1   Filed 01/21/14   Page 39 of 78 PageID #: 43

Copy


ALLMERICA FINANCIAL®
HANOVER INSURANCE®

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SPECIAL PROVISIONS - TENNESSEE

### SECTION I - PROPERTY COVERAGES

#### COVERAGE C - Personal Property

**Special Limits of Liability**

Items 10. and 11. are deleted and replaced by the following (These are Items 7. and 8. in Form HO 00 08 ):

10. $1,000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:

    a. Accessories and antennas; or

    b. Tapes, wires, records, discs or other media;

    for use with any electronic apparatus described in this Item 10.

11. $1,000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

    a. Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

    b. Is away from the "residence premises"; and

    c. Is used at any time or in any manner for any "business" purpose.

    Electronic apparatus includes:

    a. Accessories and antennas; or

    b. Tapes, wires, records, discs or other media;

    for use with any electronic apparatus described in this Item 11.

**Property Not Covered**

Item 3.b. is deleted and replaced by the following:

3. Motor vehicles or all other motorized land conveyances. This includes:

    b. Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

    (1) Accessories or antennas; or

    (2) Tapes, wires, records, discs or other media;

    for use with any electronic apparatus described in this Item 3.b.

    The exclusion of property described in 3.a. and 3.b. above applies only while the property is in or upon the vehicle or conveyance.

    We do cover vehicles or conveyances not subject to motor vehicle registration which are:

    a. Used to service an "insured's" residence; or

    b. Designed for assisting the handicapped;

#### Coverage D - Loss Of Use

For all forms other than HO 00 04 and HO 00 06, Item 1. is deleted and replaced by the following:

1. If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

    Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

For Forms HO 00 04 and HO 00 06, Item 1. is deleted and replaced by the following:

1. If a loss by a Peril Insured Against under this policy to covered property or the building containing the property makes the "residence premises" not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

    Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

Case 3:14-cv-00156   Document 1-1   Filed 01/21/14   Page 40 of 78 PageID #: 44



ADDITIONAL COVERAGES

8.Collapse is deleted and replaced by the following:

8.Collapse

a. With respect to this Additional Coverage:

(1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

(2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

(3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

(4) A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging bending, leaning, settling, shrinkage or expansion.

b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

(1) Perils Insured Against in Coverage C - Personal Property. These perils apply to covered buildings and personal property for loss insured by this additional coverage;

(2) Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

(3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

(4) Weight of contents, equipment, animals or people;

(5) Weight of rain which collects on a roof; or

(6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under Items (2), (3), (4), (5), and (6) unless the loss is a direct result of the collapse of a building or any part of a building.

This coverage does not increase the limit of liability applying to the damaged covered property.

If Endorsement HO 00 15 is attached to the policy, Section I - Additional Coverages 8. Collapse in that endorsement is deleted in its entirety and Paragraph b.(1) above is deleted and replaced by the following:

b.(1) Perils Insured Against in Coverages A. and B.

In addition, the following paragraph is added:

This additional coverage does not apply to Coverage C.

If Endorsement HO 17 31 is attached to the policy, Section I - Additional Coverages 8. Collapse in the Endorsement is deleted in its entirely and Paragraph b.(1) above is deleted and replaced by the following:

b.(1) Perils Insured Against in Coverage A.

In addition, the following paragraph is added:

This additional coverage does not apply to Coverage C - Personal Property.

9. Glass or Safety Glazing Material is deleted and replaced by the following:

9. Glass Or Safety Glazing Material

a. We cover:

(1) For all forms other than HO 00 04 and HO 00 06, the breakage of glass or safety glazing material which is part of a covered building, storm door or storm window, and for:

(a) Form HO 00 04, the breakage of glass or safety glazing material which is part of a building, storm door or storm window, and covered as Building Additions And Alterations; and

(b) Form HO 00 06, the breakage of glass or safety glazing material which is part of a building, storm door or storm window, and covered under Coverage A; and

(2) For all forms other than HO 00 04 and HO 00 06, the breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a covered building, storm door or storm window, and for:

(a) Form HO 00 04, the breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a building, storm door or storm window, and covered as Building Additions And Alterations; and

 Includes copyrighted material of Insurance Service Office, with its permission. 231-2708 07 08

Copy



(b) Form HO 00 06, the breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a building, storm door or storm window, and covered under Coverage A; and

(3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

b. This coverage does not include loss:

(1) To covered property which results because the glass or safety glazing material has been broken, except as provided in a.(3) above; or

(2) On the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss, except when the breakage results directly from Earth Movement as provided for in a.(2) above. A dwelling being constructed is not considered vacant.

Loss to glass covered under this Additional Coverage 9. will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

For Forms HO 00 01 and HO 00 08, we will pay up to $100 for loss under this coverage.

This coverage does not increase the limit of liability that applies to the damaged property.

(This is Additional Coverage 8. in Forms HO 00 01 and HO 00 08. )

The following Additional Coverage is added to all forms except HO 00 08. With respect to Form HO 00 04, the words 'covered building' used below, refer to property covered under Additional Coverage 10. Building Additions And Alterations.

11. Ordinance Or Law

a. You may use up to 10% of the limit of liability that applies to Coverage A (or for Form HO 00 04, you may use up to 10% of the limit of liability that applies to Building Additions and Alterations) for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

(2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

c. We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

(This is Additional Coverage 10. in Forms HO 00 01 and HO 00 06. )

Case 3:14-cv-00156  Document 1-1  Filed 01/21/14  Page 42 of 78 PageID #: 46



## SECTION I - EXCLUSIONS

The introductory language in Section I -Exclusions is deleted and replaced by the following:

We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

(This is Exclusion 1. in HO 00 03.)

1. **Ordinance or Law** is deleted and replaced by the following:

1. **Ordinance Or Law**, meaning any ordinance or law:

   a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion 1.a. in all forms other than HO 00 03, and 1.a.(1) in Form HO 00 03, does not apply to the amount of coverage that may be provided for under Additional Coverages, Glass Or Safety Glazing Material or Ordinance Or Law;

   b. The requirements of which result in a loss in value to property; or

   c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

   Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

   This exclusion applies whether or not the property has been physically damaged.

   (This is Exclusion 1.a. in Form HO 00 03. )

2. **Earth Movement** is deleted and replaced by the following:

2. Earth Movement, meaning:

   a. Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

   b. Landslide, mudslide, or mudflow;

   c. Subsidence or sinkhole; or

   d. Any other earth movement including earth sinking, rising or shifting:

Caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

This exclusion does not apply to loss by theft.

(This is Exclusion 1.b. in Form HO 00 03. )

4. **Power Failure** is deleted and replaced by the following:

4. Power Failure, meaning the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure of power or other utility service results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss or damage caused by that Peril Insured Against.

(This is Exclusion 1.d. in Form HO 00 03. )

## SECTION I - CONDITIONS

3. **Loss Settlement**

   Under Form HO 00 06, Item b.(2) is deleted and replaced by the following:

   (2) If the damage is not repaired or replaced within a reasonable time, at actual cash value but not more than the amount required to repair or replace.

## SECTION II - EXCLUSIONS

Under 1. Coverage E - Personal Liability and Coverage F - Medical Payments To Others; Item a. is deleted and replaced by the following:

   a. Which is expected or intended by one or more "insureds";

## SECTIONS I AND II - CONDITIONS

2. **Concealment or Fraud** is deleted and replaced by the following:

2. **Concealment Or Fraud**

   We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in obtaining or maintaining this policy or in connection with any accident or loss for which coverage is sought under this policy.

All other provisions of this policy apply.

Includes copyrighted material of Insurance Service Office, with its permission.    231-2708 07 08

Case 3:14-cv-00156   Document 1-1   Filed 01/21/14   Page 43 of 78 PageID #: 47

Copy



ALLMERICA FINANCIAL®
HANOVER INSURANCE®

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## INCREASED LIMITS ON BUSINESS PROPERTY

For an additional premium, the following Special Limits of Liability are amended.

1. The Coverage C - Personal Property Special Limit of Liability item 8. that applies to "business" property on the "residence premises" is increased by the additional limit of liability shown below.

| Increase in Limit of Liability* | Total Limit of Liability* |
|---|---|
| $ | $ |

The "Increase in Limit of Liability" does not apply to:

a. "Business" property in storage or held as a sample or for sale or delivery after sale; or

b. "Business" property pertaining to a "business" actually conducted on the "residence premises."

2. The Coverage C - Personal Property Special Limit of Liability item 9. that applies to "business" property away from the "residence premises" is increased by the additional limit of liability shown below.

| Increase in Limit of Liability* | Total Limit of Liability* |
|---|---|
| $ | $ |

The "Increase in Limit of Liability" does not apply to adaptable electronic apparatus as described in Special Limit of Liability items 10. and 11.:

This endorsement does not increase the limit of liability for Coverage C - Personal Property.

* Entries may be left blank if shown elsewhere in this policy for this coverage.

All other provisions of this policy apply.

Copy



ALLMERICA FINANCIAL®
HANOVER INSURANCE®

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### COVERAGE C INCREASED SPECIAL LIMITS OF LIABILITY

For an additional premium, the Special Limits of Liability under Coverage C - Personal Property are increased as follows:

| Property | Increase in Limit of Liability* | Total Limit of Liability* |
|---|---|---|
| 1. Money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals. | $ | $ |
| 2. Securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. | $ | $ |
| 5. Jewelry, watches, furs, precious and semi-precious stones for loss by theft; but not exceeding $2,500 for any one article. | $ | $ |
| 6. Firearms for loss by theft. | | |
| 7. Silverware, silver-plated ware, goldware, gold-plated ware and pewterware for loss by theft. | $ | $ |
| 10. Electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. | $ | $ |
| 11. Electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. This special limit applies only if the electronic apparatus is away from the "residence premises" and used at any time or in any manner for any "business" purpose. | $ | $ |

* Entries may be left blank if shown elsewhere in this policy for this coverage.

All other provisions of this policy apply.

Includes copyrighted information from
Insurance Services Office, Inc., with their permission.

**Page 1 of 1**

Case 3:14-cv-00156   Document 1-1   Filed 01/21/14   Page 45 of 78 PageID #: 49

Copy




ALLMERICA FINANCIAL*
HANOVER INSURANCE*

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COVERAGE C INCREASED SPECIAL LIMITS OF LIABILITY - WATERCRAFT

---

**SECTION I - PROPERTY COVERAGES**
**COVERAGE C - PERSONAL PROPERTY**

**Special Limits Of Liability**

The special limit of liability is increased as per below:

| | Property | Increase In Limit Of Liability * | Total Limit Of Liability * |
|---|---|---|---|
| 3. | Watercraft, including their trailers, furnishings, equipment and outboard engines or motors. | | |

All other provisions of this policy apply.

*Entries may be left blank if shown elsewhere in this policy for this coverage.

---

231-2323 0606





**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COVERAGE C INCREASED SPECIAL LIMITS OF LIABILITY - TRAILERS

| SECTION I - PROPERTY COVERAGES | | |
|---|---|---|
| COVERAGE C - PERSONAL PROPERTY | | |
| | | |
| **Special Limits Of Liability** | | |
| The special limit of liability is increased as noted below: | | |
| **Property** | **Increase In Limit Of Liability \*** | **Total Limit Of Liability \*** |
| 4. Trailers not used with watercraft. | | |
| All other provisions of this policy apply. | | |
| \*Entries may be left blank if shown elsewhere in this policy for this coverage. | | |

231-2324 0606

Page 1 of 1





ALLMERICA FINANCIAL™
HANOVER INSURANCE®

Copy

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CREDIT CARD, FUND TRANSFER CARD, FORGERY AND COUNTERFEIT MONEY COVERAGE
### Increased Limit

For an additional premium, the limit of liability for Additional Coverage 6., Credit Card, Fund Transfer Card, Forgery and Counterfeit Money, is increased to $ _____ *.

*Entries may be left blank if shown elsewhere in this policy for this coverage.

All other provisions of this policy apply.

Copyright, Insurance Services Office, Inc., 1990

HO 04 53 04 91

 

# ADDITIONAL COVERAGE - INCREASED LIMIT
# TREES, SHRUBS AND OTHER PLANTS

SECTION I - PROPERTY COVERAGES
ADDITIONAL COVERAGES- 3. Trees, Shrubs and Other Plants.

The $500 limit available for any one tree, shrub or plant under this coverage is replaced with the new limit as shown on the declarations page.

Case 3:14-cv-00156   Document 1-1   Filed 01/21/14   Page 49 of 78 PageID #: 53





**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL COVERAGE - INCREASED LIMIT
# FIRE DEPARTMENT SERVICE CHARGE

| SECTION I - PROPERTY COVERAGES | | |
|---|---|---|
| ADDITIONAL COVERAGES | | |
| | | |
| The additional coverage limit is increased as noted below: | | |
| | | |
| Property | Increase In Limit Of Liability * | Total Limit Of Liability * |
| 4. Fire Department Service Charge | | |

All other provisions of this policy apply.

*Entries may be left blank if shown elsewhere in this policy for this coverage.

Case 3:14-cv-00156   Document 1-1   Filed 01/21/14   Page 50 of 78 PageID #: 54

·Copy

 

**ALLMERICA FINANCIAL°**
**HANOVER INSURANCE°**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SECTION II - ADDITIONAL COVERAGE
# INCREASED LIMIT - DAMAGE TO PROPERTY OF OTHERS

| SECTION II - LIABILITY COVERAGES | | |
|---|---|---|
| **ADDITIONAL COVERAGES** | | |
| | | |
| The additional coverage limit is increased as noted below: | | |
| | | |
| **Property** | **Increase In Limit Of Liability** * | **Total Limit Of Liability** * |
| 3.  Damage to Property of Others | | |

All other provisions of this policy apply.

*Entries may be left blank if shown elsewhere in this policy for this coverage.

Case 3:14-cv-00156   Document 1-1   Filed 01/21/14   Page 51 of 78 PageID #: 55





.THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LOSS ASSESSMENT COVERAGE

1.  Increased Limit - Residence Premises
    For an additional premium, the limit of liability for Section I Additional Coverage 7 and. Section II Additional Coverage 4, Loss Assessment, is increased to:

    Increase in Limit                    Total Limit of
    of Liability*                        Liability*

    $                                    $

    SPECIAL LIMIT - We will not pay more than $1,000 of your assessment that results from a deductible in the policy of insurance purchased by a corporation or association of property owners.

2.  Additional Locations
    For an additional premium, we agree to pay, up to the limit of liability listed below, your share of covered loss assessments as described in Section I Additional Coverage 7 and Section II Additional Coverage 4 of the policy, arising out of the premises listed below.

    Location of Unit*                    Limit of Liability*

    SPECIAL LIMIT - We will not pay more than $1,000 of your assessment per unit that results from a deductible in the policy of insurance purchased by a corporation or association of property owners.
    Section II - Coverage E - Personal Liability Exclusion 2.a.(1) does not apply to this coverage.

    *Entries may be left blank if shown elsewhere in this policy for this coverage.
    All other provisions of this policy apply.

Copyright, Insurance Services Office, Inc., 1990

HO 04 35 04 91





## Extended Dwelling Replacement Cost Coverage - 150%

We will provide replacement cost insurance for the residence premises shown in the Declarations.

This coverage applies only to the dwelling insured under Coverage A.

The following provisions apply:

1. Section I - Conditions, 3b Loss Settlement - Coverage A, is replaced by the following:

    a. The limit of liability for Coverage A - Dwelling will be no more than one hundred and fifty percent of the Coverage A limit shown on the Declarations page.

    b. The limit of liability for Coverage A will be no more than the amount spent to repair or replace all or part of the dwelling with the same type of construction at the same location.

    c. If the replacement of covered property is not feasible because the property or materials are:
    1. irreplaceable antiques;
    2. obsolete;
    3. rare; or
    4. not available,

    we will reimburse you for materials similar in nature to those damaged.

    d. When damage exceeds two thousand five hundred dollars, up to the Coverage A limit, we will not pay more than the actual cash value of the damage until the repair or replacement is complete.

    e. The named insured may file a claim on an actual cash value basis. Then, within one hundred and eighty days after the loss, make claim for additional liability due according to the provisions of this endorsement.

2. The named insured agrees to:

    a. Keep the Coverage A Limit at one hunded percent of replacement cost.

    b. Report to us within ninety days of the start of any improvements or additions to the dwelling.

    If you do not notify us and the costs exceed ten thousand dollars, the Coverage A Limit shown on the Declarations will again become the maximum limit of liability.

    c. Pay renewal premiums that reflect the current replacement cost of the Dwelling.
    The amount of the increase shall be made in consideration of changes in the cost of construction. Payment of the renewal will constitute acceptance of the revised limit.

    All other terms and conditions of this policy apply.

231-2235 (12-05)





ALLMERICA FINANCIAL®
HANOVER INSURANCE®

_THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PERSONAL PROPERTY REPLACEMENT COST

**SECTION I**

For an additional premium, covered losses to the following property are settled at replacement cost at the time of loss:

    a.  Coverage C - Personal Property;

    b.  If covered in this policy, awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings.

Personal Property Replacement Cost coverage will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy:

    a.  Jewelry;

    b.  Furs and garments trimmed with fur or consisting principally of fur;

    c.  Cameras, projection machines, films and related articles of equipment;

    d.  Musical equipment and related articles of equipment;

    e.  Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding pens, pencils, flasks, smoking implements or jewelry; and

    f.  Golfer's equipment meaning golf clubs, golf clothing and golf equipment.

Personal Property Replacement Cost coverage will not apply to other classes of property separately described and specifically insured.

1. **PROPERTY NOT ELIGIBLE**

   Property listed below is not eligible for replacement cost settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

       a.  Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.

       b.  Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.

       c.  Articles not maintained in good or workable condition.

       d.  Articles that are outdated or obsolete and are stored or not being used.

2. **REPLACEMENT COST**

   The following loss settlement procedure applies to all property insured under this endorsement:

       a.  We will pay no more than the least of the following amounts:

           (1)  Replacement cost at the time of loss without deduction for depreciation;

           (2)  The full cost of repair at the time of loss;

           (3)  The limit of liability that applies to Coverage C, if applicable;

           (4)  Any applicable special limits of liability stated in this policy; or

           (5)  For loss to any item separately described and specifically insured in this policy, the limit of liability that applies to the item.

       b.  When the replacement cost for the entire loss under this endorsement is more than $500, we will pay no more than the actual cash value for the loss or damage until the actual repair or replacement is complete.

       c.  You may make a claim for loss on an actual cash value basis and then make claim within 180 days after the loss for any additional liability in accordance with this endorsement.

All other provisions of this policy apply.

Copyright, Insurance Services Office, Inc., 1990

HO 04 90 04 91

·Copy



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# REFRIGERATED PROPERTY COVERAGE

### SECTION I - PROPERTY COVERAGES
### ADDITIONAL COVERAGES

The following coverage is an added.

### Refrigerated Property Coverage

We will pay up to $500 for a direct loss to covered property stored in freezers or refrigerators on the "residence premises." The loss must be caused by one of the two events listed here.
1. The interruption of electrical service to the unit. The interruption:
   a. must be caused by damage to generating equipment; or
   b. must be caused by damage to transmitting equipment.
2. The Mechanical failure of the unit storing the covered property.

Coverage will apply only if the following conditions are met.
1. You have kept the unit in proper working condition immediately prior to the loss.

2. You have exercised diligence in inspecting the unit and maintaining the unit.
3. All reasonable means are used to protect the covered property from more damage.

The limit of liability for Coverage C is not increased by this endorsement.

The Section I - Power Failure exclusion does not apply to this coverage.

### Deductible

This coverage is subject to your policy level deductible. This deductible is shown on your declarations page. We will only pay that part of the loss that is in excess of your policy level deductible.

All other provisions of the policy apply.




ALLMERICA FINANCIAL*
HANOVER INSURANCE*

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LOCK REPLACEMENT COVERAGE

**SECTION I - PROPERTY COVERAGES**
**ADDITIONAL COVERAGES**

The following Additional Coverage is added:

**Lock Replacement**

We will pay up to the limit described in your Declarations page for locks or cylinders which are replaced as a result of stolen keys. We, and the police, must be promptly notified of the theft.

The stolen keys must be to those buildings and structures at the residence premises. The locks must be replaced within seventy-two hours after the keys are stolen. We do not cover locks used with any vehicle, watercraft or aircraft. Keys given to a custodian are not considered stolen. We will pay the amount spent to repair or replace the locks or cylinder with ones of like kind and quality.

This coverage is extra insurance. No deductible applies.

231-2331 0606

Case 3:14-cv-00156  Document 1-1  Filed 01/21/14  Page 56 of 78 PageID #: 60

·Copy


ALLMERICA FINANCIAL"
HANOVER INSURANCE®

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

## IDENTITY FRAUD EXPENSE COVERAGE

We will pay for "identity fraud expenses" of an "insured" incurred as a result of an "identity fraud occurrence". This includes "identity fraud" resulting from Internet usage by any "insured".

**Section II Personal Liability:**
We will pay up to $25,000 for any one occurrence of "identity fraud" anywhere in the world. A $250 deductible applies to each occurrence of "identity fraud".

### DEFINITIONS
"Identity fraud" is defined as the act of transfer or use of the means of identity of an "insured", without lawful authority, which constitutes a:
    1.  violation of federal law; or
    2.  crime under any applicable:
        a.  state; or
        b.  other governmental body's law.

"Identity fraud" includes the misuse of an "insured's":
1.  name;
2.  address;
3.  social security number;
4.  bank account number; or
5.  other identifying information; and the use of that information to:
    a.  open credit card accounts;
    b.  take over existing accounts;
    c.  obtain loans in the "insured's" name; or
    d.  steal funds from the covered person's savings, checking or investment accounts.

"Identify fraud occurrence" is defined as an act or series of acts of "identity fraud" by a person or group, commencing within the policy period.

"Identity fraud expenses" is defined as expenses incurred:
1.  To prepare and notarize documents, affidavits or similar documents for:
    a.  credit bureaus;
    b.  financial institutions and similar credit grantors; and
    c.  law enforcement agencies.
2.  Sending certified mail to:
    a.  credit bureaus;
    b.  financial institutions and similar credit grantors; and
    c.  law enforcement agencies.
3.  To reapply for credit or loan or loans as a result of a rejection of credit or a loan due to the lender having incorrect credit information as a result of "identity fraud".

### ADDITIONAL COVERAGES
We will also pay for:
    1.  Lost earnings of an "insured" as a result of time off from work to complete fraud related documents and meet with:

Case 3:14-cv-00156   Document 1-1   Filed 01/21/14   Page 57 of 78 PageID #: 61





ALLMERICA FINANCIAL™
HANOVER INSURANCE®

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PERSONAL INJURY

For an additional premium, under Coverage E - Personal Liability, the definition "bodily injury" is amended to include personal injury.

"Personal injury" means injury arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment, or malicious prosecution;
2. Libel, slander or defamation of character; or
3. Invasion of privacy, wrongful eviction or wrongful entry.

Section II Exclusions do not apply to personal injury.

Personal injury insurance does not apply to:

1. Liability assumed by the "insured" under any contract or agreement except any indemnity obligation assumed by the "insured" under a written contract directly relating to the ownership, maintenance or use of the premises;
2. Injury caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of an "insured";
3. Injury sustained by any person as a result of an offense directly or indirectly related to the employment of this person by the "insured";
4. Injury arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";
5. Civic or public activities performed for pay by an "insured"; or
6. Injury to you or an "insured" within the meaning of part a. or b. of "insured" as defined.

All other provisions of this policy apply.

Copyright, Insurance Services Office, Inc., 1990

HO 24 82 04 91




ALLMERICA FINANCIAL
HANOVER INSURANCE

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ORDINANCE OR LAW - INCREASED AMOUNT OF COVERAGE
### HO 04 77 06 94

For the premium charged, the percentage applied to the Coverage A limit of liability, or for Form HO 00 04, the percentage applied to the Building Additions and Alterations limit of liability, under Additional Coverage 11. Ordinance or Law, is increased from 10% to the percentage shown below.

New Total Percentage        %*

This is Additional Coverage 10. in Forms HO 00 01 and HO 00 06.

* Entry may be left blank if shown elsewhere in the policy for this coverage.

All other provisions of this policy apply.

Copyright, Insurance Services Office, Inc., 1994

HO 04 77 06 94




ALLMERICA FINANCIAL®
HANOVER INSURANCE®

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WATER BACK-UP AND
# SUMP DISCHARGE OR OVERFLOW

## A. Coverage

We insure, up to the limit shown on the policy declaration, for direct physical loss, not caused by the negligence of an "insured", to property covered under Section I caused by water, or waterborne material, which:

1. Backs up through sewers or drains; or

2. Overflows or is discharged from a:

    a. Sump, sump pump; or

    b. Related equipment;

    even if such overflow or discharge results from mechanical breakdown or power failure to the sump pump whether originating on or off the premises. This coverage does not apply to direct physical loss of the sump pump, or related equipment, which is caused by mechanical breakdown.

We do not cover any loss which:

    a) occurs or is in progress, within the first five (5) days after inception of this coverage.

    b) results in any loss caused by fungi, mildew, mold, wet or dry rot which results from a loss covered by this form.

This coverage does not increase the limits of liability for Coverages A, B, C or D stated in the Declarations.

## B. Section I - Perils Insured Against

With respect to the coverage described in A. above, Paragraphs:

2.e.(2) in Form HO 00 03;

1.b.(4)(b) in Endorsement HO 00 15;

3.d.(2) in Endorsement HO 17 31;

2.e.(2) in Endorsement HO 17 32;

2.j.(2) in Endorsements 231-2350, 231-2363, 231-2384, and 231-2592

are replaced by the following:

    Latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

## C. Special Deductible

The following replaces any other deductible provision in this policy with respect to loss covered under this endorsement. We will pay only that part of the total of all loss under Section I that exceeds $500 not to exceed the limit on the policy declaration. No other deductible applies to this coverage. This deductible does not apply with respect to Coverage D - Loss of Use.

## D. Exclusion

The Water Damage Exclusion is replaced by the following:

Water

This means:

1. Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

2. Water which:

    a. Backs up through sewers or drains; or

    b. Overflows or is otherwise discharged from a sump, sump pump or related equipment;

    as a direct or indirect result of flood;

3. Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

4. Waterborne material carried or otherwise moved by any of the water referred to in D.1. through D.3. of this Exclusion.

This Exclusion applies regardless of whether any of the above, in D.1. through D.4., is caused by an act of nature or is otherwise caused.

This Exclusion applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

However, direct loss by fire, explosion or theft resulting from any of the above, in D.1. through D.4., is covered. All other provisions of this policy apply.

Case 3:14-cv-00156   Document 1-1   Filed 01/21/14   Page 60 of 78 PageID #: 64





## Declaration Page
## HO-3 Select Plus Trim Coverage - Tennessee

This statement of coverage is added to your Policy Declarations. The following coverages are either additional coverages to your HO 00 03 policy, or increased limits already provided by your HO 00 03 contract.

| COVERAGE | LIMIT OF LIABILITY | FORM NUMBER |
|---|---|---|
| Coverage C- Personal Property | Increased to 75% of the Coverage A Limit | See Coverage C Limits Listed in the Declarations |
| Coverage D- Loss of Use | Increased to 30% of the Coverage A Limit | See Coverage D Limit Listed in the Declarations |
| Personal Injury Coverage | Section II Coverage E Limit | HO 24 82 04 91 |
| Loss Assessment Coverage | $5,000* | HO 04 35 04 91 |
| Water Back Up and Sump Discharge or Overflow | $10,000** | 231-5760 03 09 |
| Business Property On Premises | $5,000 | 231-2364 06 06 |
| Business Property Off Premises | $1,000 | 231-2364 06 06 |
| Money, Bank Notes and Related Items | $750 | 231-2745 09 09 |
| Securities, Records and Related Items | $5,000 | 231-2745 09 09 |
| Silverware | $5,000 | 231-2745 09 09 |
| Jewelry, Watches and Furs | $5,000 | 231-2745 09 09 |
| Watercraft | $2,500 | 231-2323 06 06 |
| Trailers-Not used with Watercraft | $2,500 | 231-2324 06 06 |
| Firearms | $3,000 | 231-2745 09 09 |
| Credit Card, Forgery, Counterfeit | $5,000 | HO 04 53 04 91 |
| Trees, Shrubs, Plants per item Limit | $1,000 per item | 231-2326 06 06 |
| Fire Department Service Charge | $1,500 | 231-2325 06 06 |
| Damage to Property of Others | $1,500 | 231-2328 06 06 |
| Extended Dwelling Replacement Cost | 150% of the Coverage A Limit | 231-2235 12 05 |
| Refrigerated Products | $500 | 231-2341 06 06 |
| Lock Replacement | $1,000 | 231-2331 06 06 |
| Identity Fraud Expense | $25,000 | 231-1937 01 01 |
| Ordinance or Law | 20% of the Coverage A Limit | HO 04 77 06 94 |
| Personal Property Replacement Cost | Provides Replacement Cost Coverage for Coverage C-Personal Property. | HO 04 90 04 91 |

\* The limit shown here for Loss Assessment is in addition to any other Loss Assessment Coverage shown on your Declarations Page. If additional coverage has not been chosen, the limit shown here is the total policy limit.

\*\* The limit shown here for Water Back Up and Sump Discharge or Overflow is in addition to any other Water Back Up and Sump Discharge or Overflow coverage shown on your declaration page. If additional increased limits have not been chosen, the limit shown here is the policy limit.

231-2421 09 09

Case 3:14-cv-00156   Document 1-1   Filed 01/21/14   Page 61 of 78 PageID #: 65

 

ALLMERICA FINANCIAL
HANOVER INSURANCE

## PREMISES ALARM OR FIRE PROTECTION SYSTEM

For a premium credit, we acknowledge the installation of an alarm system or automatic sprinkler alarm system approved by us on the **RESIDENCE PREMISES.** You agree to maintain this system in working order and to notify us promptly of any changes made to the system or if it is removed.

We further agree that if credit is given for a local burglar alarm or a burglar alarm reporting to either a central station or a police department, we will waive the deductible shown on the declarations page for any theft loss from the **RESIDENCE PREMISES,** if it is determined that the alarm system functioned as designed.

391-0565 (1-83)





51     •          AMENDED DECLARATION                #

EFFECTIVE 09/24/12

## H O M E O W N E R S   P O L I C Y

REASON FOR AMENDMENT: CHANGE MORTGAGEE

| POLICY NUMBER | POLICY PERIOD FROM | TO | COVERAGE IS PROVIDED IN THE | AGENCY CODE |
|---|---|---|---|---|
| HV5 9579040 | 08/03/12 | 08/03/13 | MASSACHUSETTS BAY INSURANCE CO | 180242900 |

| NAMED INSURED AND ADDRESS | AGENT |
|---|---|
| SHANE DECKER<br>ALYSON DECKER<br>520 SCOTTS CREEK TRL<br>HERMITAGE, TN 37076 | TELEPHONE: 866-873-1609<br>IRVIN-DYAL & BROWN INS.<br>PL HANOVER CSC<br>3326 ASPEN GROVE DR, #100<br>FRANKLIN, TN 37067 |

POLICY PERIOD- 12:01 A.M. STANDARD TIME AT THE RESIDENCE PREMISES

THE PREMISES COVERED BY THIS POLICY IS LOCATED AT THE ABOVE ADDRESS.

| CONSTRUCTION | PREM. GROUP | NO. OF FAM. | TERR. | PROT. CODE | YR. CONST. | SECTION I LOSS DEDUCTIBLE | SEAS/SEC |
|---|---|---|---|---|---|---|---|
| FRAME | 184 | 1 | 25 | 01 | 05 | $1000 PER OCCURRENCE | NO |

COVERAGE IS PROVIDED WHERE A PREMIUM OR A LIMIT OF LIABILITY IS SHOWN

| SECTION I COVERAGE | LIMIT OF LIABILITY | PREMIUMS |
|---|---|---|
| A. DWELLING | $193,000 | $1,233.00 |
| B. OTHER STRUCTURES | $19,300 | |
| C. PERSONAL PROPERTY | $144,750 | |
| D. LOSS OF USE | $57,900 | |
| SECTION II COVERAGE | | |
| E. PERSONAL LIABILITY | $300,000 EACH OCCURRENCE | |
| F. MEDICAL PAY. TO OTHERS - | $2,000 EACH PERSON | $16.00 |
| TOTAL BASIC PREMIUM - - - - - - - - - - - - | | $1,249.00 |

CREDIT FOR BEING LOSS FREE                             $0.00

ADDITIONAL PREMIUMS<br>
HO-3 SELECT PLUS                                    $101.00<br>
            TOTAL ADDITIONAL PREMIUMS - - - - - - - - - - - $101.00

RATING CREDITS<br>
   OPTIONAL DEDUCTIBLE                             $74.00CR<br>
   GROUP OR SELECT                                $222.00CR<br>
     TOTAL RATING CREDITS                          $296.00CR

VALUED CUSTOMER CREDITS<br>
  CREDIT FOR PROTECTIVE DEVICES<br>
  NEW HOME DISCOUNT<br>
  NON-SMOKER DISCOUNT 1% CREDIT<br>
  25% CREDIT FOR INSURING BOTH YOUR AUTO AND HOME WITH US<br>
     MAXIMUM CREDIT ALLOWED                     $493.00CR<br>
         TOTAL CREDITS - - - - - - - - - - - - - - - - $789.00CR

           TOTAL PREMIUM ADJUSTMENTS - - - - - - - - - - - $688.00CR<br>
           TOTAL ANNUAL PREMIUM - - - - - - - - - - - - $561.00

PREV PREMIUM    $561.00   CHANGE      $.00       CHANGE IN PREMIUM      $.00

CONTINUED ON NEXT PAGE

09/28/12                      1084237133              ESCROW BILLED

ORIGINAL/INSURED            PAGE 01 OF 02



AMENDED DECLARATION #

EFFECTIVE 09/24/12

H O M E O W N E R S   P O L I C Y

REASON FOR AMENDMENT: CHANGE MORTGAGEE

| POLICY NUMBER | POLICY PERIOD | | COVERAGE IS PROVIDED IN THE | AGENCY CODE |
|---|---|---|---|---|
| | FROM | TO | | |
| HV5 9579040 | 08/03/12 | 08/03/13 | MASSACHUSETTS BAY INSURANCE CO | 180242900 |

| NAMED INSURED AND ADDRESS | AGENT |
|---|---|

SHANE DECKER
ALYSON DECKER
520 SCOTTS CREEK TRL
HERMITAGE, TN  37076

TELEPHONE: 866-873-1609
IRVIN-DYAL & BROWN INS.
PL HANOVER CSC
3326 ASPEN GROVE DR, #100
FRANKLIN, TN  37067

MORTGAGEE
NATIONSTAR MORTGAGE LLC
ISAOA LN#0596845450-001D
PO BOX 7729
SPRINGFIELD, OH  45501

FORMS AND ENDORSEMENTS - HO0003 04/91, HO0496 04/91, 231-0600 08/98,
231-1340 12/91, 231-1529 02/94, 231-1997 02/03, 231-2698 06/09,
231-2708 07/08, 231-2364 06/06, 231-2745 09/09, 231-2323 06/06,
231-2324 06/06, HO0453 04/91, 231-2326 06/06, 231-2325 06/06, 231-2328 06/06,
HO0435 04/91, 231-2235 12/05, HO0490 04/91, 231-2341 06/06, 231-2331 06/06,
231-1937 01/01, HO2482 04/91, HO0477 06/94, 231-5760 03/09, 231-2421 09/09,
391-0565 01/83.

DESCRIPTION OF ADDITIONAL COVERAGES

THIS POLICY PROVIDES SINKHOLE LOSS COVERAGE

LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE
(HO-3) - SECTION I ONLY

YOUR POLICY INCLUDES A 0% LOSS SURCHARGE/CREDIT.

CREDIT FOR PROTECTIVE DEVICES                    PERCENTAGE IS 05

AUTHORIZED COMPANY REPRESENTATIVE
IRVIN-DYAL & BROWN INS.

Case 3:14-cv-00156   Document 1-1   Filed 01/21/14   Page 64 of 78 PageID #: 68

Copy



AMENDED DECLARATION                    #
EFFECTIVE 09/25/12
H O M E O W N E R S   P O L I C Y

REASON FOR AMENDMENT: CHANGE MORTGAGEE

| POLICY NUMBER | POLICY PERIOD FROM | TO | COVERAGE IS PROVIDED IN THE | AGENCY CODE |
|---|---|---|---|---|
| HV5 9579040 | 08/03/12 | 08/03/13 | MASSACHUSETTS BAY INSURANCE CO | 180242900 |

| NAMED INSURED AND ADDRESS | AGENT |
|---|---|
| SHANE DECKER<br>ALYSON DECKER<br>520 SCOTTS CREEK TRL<br>HERMITAGE, TN  37076 | TELEPHONE: 866-873-1609<br>IRVIN-DYAL & BROWN INS.<br>PL HANOVER CSC<br>3326 ASPEN GROVE DR, #100<br>FRANKLIN, TN  37067 |

POLICY PERIOD- 12:01 A.M. STANDARD TIME AT THE RESIDENCE PREMISES

THE PREMISES COVERED BY THIS POLICY IS LOCATED AT THE ABOVE ADDRESS.

| CONSTRUCTION | PREM. GROUP | NO. OF FAM. | TERR. | PROT. CODE | YR. CONST. | SECTION I LOSS DEDUCTIBLE | SEAS/SEC |
|---|---|---|---|---|---|---|---|
| FRAME | 184 | 1 | 25 | 01 | 05 | $1000 PER OCCURRENCE | NO |

COVERAGE IS PROVIDED WHERE A PREMIUM OR A LIMIT OF LIABILITY IS SHOWN

| SECTION I COVERAGE | LIMIT OF LIABILITY | PREMIUMS |
|---|---|---|
| A. DWELLING | $193,000 | $1,233.00 |
| B. OTHER STRUCTURES | $19,300 | |
| C. PERSONAL PROPERTY | $144,750 | |
| D. LOSS OF USE | $57,900 | |
| SECTION II COVERAGE | | |
| E. PERSONAL LIABILITY | $300,000 EACH OCCURRENCE | |
| F. MEDICAL PAY. TO OTHERS - | $2,000 EACH PERSON | $16.00 |
| TOTAL BASIC PREMIUM - - - - - - - - - - - | | $1,249.00 |

CREDIT FOR BEING LOSS FREE                                              $0.00

ADDITIONAL PREMIUMS
HO-3 SELECT PLUS                                                        $101.00
           TOTAL ADDITIONAL PREMIUMS - - - - - - - - - - -             $101.00
RATING CREDITS
OPTIONAL DEDUCTIBLE                                                     $74.00CR
GROUP OR SELECT                                                        $222.00CR
      TOTAL RATING CREDITS                                            $296.00CR

VALUED CUSTOMER CREDITS
CREDIT FOR PROTECTIVE DEVICES
NEW HOME DISCOUNT
NON-SMOKER DISCOUNT 1% CREDIT
25% CREDIT FOR INSURING BOTH YOUR AUTO AND HOME WITH US
      MAXIMUM CREDIT ALLOWED                                          $493.00CR
           TOTAL CREDITS - - - - - - - - - - - - - - - -             $789.00CR

           TOTAL PREMIUM ADJUSTMENTS - - - - - - - - - - -           $688.00CR
           TOTAL ANNUAL PREMIUM - - - - - - - - - -                   $561.00

PREV PREMIUM    $561.00   CHANGE        $.00      CHANGE IN PREMIUM      $.00

10/15/12

CONTINUED ON NEXT PAGE
1084237133
ORIGINAL/INSURED

ESCROW BILLED
PAGE 01 OF 02

Case 3:14-cv-00156  Document 1-1  Filed 01/21/14  Page 65 of 78 PageID #: 69



AMENDED DECLARATION

EFFECTIVE 09/25/12   #

H O M E O W N E R S   P O L I C Y

REASON FOR AMENDMENT: CHANGE MORTGAGEE

| POLICY NUMBER | — POLICY PERIOD — | | COVERAGE IS PROVIDED IN THE | AGENCY CODE |
| | FROM | TO | | |
| HV5 9579040 | 08/03/12 | 08/03/13 | MASSACHUSETTS BAY INSURANCE CO | 180242900 |

| NAMED INSURED AND ADDRESS | AGENT |
| SHANE DECKER<br>ALYSON DECKER<br>520 SCOTTS CREEK TRL<br>HERMITAGE, TN 37076 | TELEPHONE: 866-873-1609<br>IRVIN-DYAL & BROWN INS.<br>PL HANOVER CSC<br>3326 ASPEN GROVE DR, #100<br>FRANKLIN, TN 37067 |

MORTGAGEE
NATIONSTAR MORTGAGE LLC
ISAOA LN#0596845450
PO BOX 7729
SPRINGFIELD, OH 45501

FORMS AND ENDORSEMENTS - HO0003 04/91, HO0496 04/91, 231-0600 08/98,
231-1340 12/91, 231-1529 02/94, 231-1997 02/03, 231-2698 06/09,
231-2708 07/08, 231-2364 06/06, 231-2745 09/09, 231-2323 06/06,
231-2324 06/06, HO0453 04/91, 231-2326 06/06, 231-2325 06/06, 231-2328 06/06,
HO0435 04/91, 231-2235 12/05, HO0490 04/91, 231-2341 08/06, 231-2331 06/06,
231-1937 01/01, HO2482 04/91, HO0477 06/94, 231-5760 03/09, 231-2421 09/09,
391-0565 01/83.

DESCRIPTION OF ADDITIONAL COVERAGES

THIS POLICY PROVIDES SINKHOLE LOSS COVERAGE

LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE
(HO-3) - SECTION I ONLY

YOUR POLICY INCLUDES A 0% LOSS SURCHARGE/CREDIT.

CREDIT FOR PROTECTIVE DEVICES                PERCENTAGE IS 05

AUTHORIZED COMPANY REPRESENTATIVE
IRVIN-DYAL & BROWN INS.

10/15/12                    1084237133                ESCROW BILLED
                        ORIGINAL/INSURED            PAGE 02 OF 02

Case 3:14-cv-00156   Document 1-1   Filed 01/21/14   Page 66 of 78 PageID #: 70

FILED

2013 DEC 27   PH 12: 11

RICHARD R. ROOKER CLERK

D.C.

**The Hanover**
Insurance Group..

8/26/2013

Shane Decker and Alyson Decker
520 Scotts Creek Trail
Hermitage, TN 37076

Re:     Type: Settlement
        Claim #: 15-00114700
        Policy #: HV5-9579040
        Date of Loss: 5/13/2013

Dear Mr. and Mrs. Decker,

Please allow this correspondence to confirm the inspection took place at your location of 520
Scotts Creek Trail, Hermitage, TN 37076 by HSA Engineers & Scientists. Based on the physical
evidence and the investigation, it was determined that two (2) ground surface depressions were
located in the rear of the property within the drainage swale area, about 25 to 30 feet from the
rear foundation stem wall. The results of the closest test borings indicated that the ground
surface depressions were caused by sinkhole activity (i.e., cover-collapse sinkholes).
However, the viewable boundaries of the drainage swale sinkholes were not within the
structure's foundation pressure zone, and no significant settlement-related damage was
observed along the rear foundation stem wall or in other areas of the structure. Additionally,
the measured floor topography was consistent with normal expected variations. Furthermore,
the borings performed along the rear foundation stem wall (AB-3 and AB-4 in the enclosed
report) indicated competent material capable of supporting the structure. **Therefore, it is the
opinion of HAS Engineers & Scientists and Hanover Insurance that the identified
sinkhole activity conditions and cover-collapse sinkholes are not affecting the building
structure. Therefore, there is no physical loss to the covered property.**

As you are aware, HSA was charged with establishing the cause of the damage to your home as
well as investigating whether the damage to your home was caused by sinkhole activity. This
investigation was performed in accordance with TN Code (Annotated) Title 56, Chapter 7, Part 1,
(130) (d). The investigation determined the following:

    - Some of the cosmetic/architectural damage observed in the home was the result
      of normal building material behavior (expansion and contraction) in response to
      normal changes in temperature and/or humidity.
    - Some of the damage was related to shrinkage of cementitious materials (concrete,
      grout, mortar, etc.), which is a fundamental characteristic of these types of
      materials.

**EXHIBIT**
**2**

- Some of the damage was related to minor differential slab/foundation movement (settlement and/or uplift) associated with shallow subsurface mechanisms (not sinkhole activity).

Based on the collected data summarized above, it is HSA's opinion that sinkhole activity is not a cause of the physical damage to the home. It is our opinion that the analysis conducted by HSA, as documented in the report, was of sufficient scope to eliminate sinkhole activity as a cause of damage to the home within a reasonable professional probability.

Therefore, coverage provided under endorsement 231-1529 ed. 2/94, Sinkhole Collapse, does not apply. Further, your policy with the Hanover Insurance Company states:

SECTION 1 – PERILS INSURED AGAINST
Coverage A – Dwelling and Coverage B – Other Structure

We insure against risk of *direct loss* to property described in Coverages A and B only if that loss is *a physical loss to property*. We do not insure, however, for loss:
    1. Involving Collapse;
    2. Caused by:
        e. Any of the following:
            (1) Wear and tear, marring, deterioration;
            (2) Inherent vice, latent defect, mechanical breakdown;
            (3) Smog, rust, or other corrosion, mold, wet or dry rot;
            (6) Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings;

Based on the above facts, policy conditions and exclusions, there is no coverage or claim for sinkhole activity for this loss. In view of the above conditions and exclusionary language we will not be able to offer any payment for this loss.

By informing you that no coverage exists for this loss, for the above reason or reasons, Hanover Insurance Company neither waives nor intends to waive any of its rights or further causes of denial it may have under the policy or otherwise, all of which rights and causes are hereby specifically reserved.

I am sorry we could have been of more assistance to you in this matter. If you have any additional questions or information you feel will affect our decision please send it to our attention for our review or call me to discuss it at 615-997-8907.

Sincerely

Amanda Boiteau
Property Adjuster

Cc: Claim file
    Irvin-Dyal & Brown Insurance



Mary Beth Hagan
Amy J. Farrar
Sonya Smith Wright
Joshua A. Jenkins
James A. Turner



106 North Church Street
Murfreesboro, TN 37130
Telephone: 615.800.4747
Facsimile: 615.900.3473
www.haganfarrar.com

September 30, 2013

<u>SENT VIA FACSIMILE (508) 926-5660</u>
The Hanover Insurance Group
Ms. Amanda Boiteau, Property Adjuster

|  | Re: | Insured: | Shane & Alyson Decker |
|---|---|---|---|
|  |  | Address: | 520 Scotts Creek Trail |
|  |  |  | Hermitage, TN 37076 |
|  |  | Claim No.: | 15-00114700 |

Dear Ms. Boiteau:

I represent Shane and Alyson Decker with regards to their insurance claim with The Hanover Insurance Group ("Hanover") for damages that occurred to their home as a result of sinkhole activity. As you are aware, my clients contracted with Hanover for a Homeowner's Insurance Policy ("Policy") and this Policy was in full force and effect at the time of the loss.

My client's home was severely damaged and they contacted Hanover to report the loss that occurred to their home on May 13, 2013. My clients have received the report from HSA Engineers and Scientists, Inc. ("HSA"). It appears that HSA found that there was in fact sinkhole activity on the property, but determined there was no structural damage. However, the Policy covers any physical damage. Given this information, it appears that these damages should have been covered under the Policy. We would ask that you please re-evaluate this claim and conduct a proper investigation. We request that any photographs, reports, or investigations that have been conducted are produced immediately.

I would also request that you provide a certified copy of my client's Policy to me at 106 North Church Street, Murfreesboro, TN 37130.

If we have not received a satisfactory response by October 14, 2013, my clients have given me the authority to proceed with whatever legal action is necessary to resolve this matter including seeking attorney's fees and expenses if appropriate. This letter also serves as a written demand and notice that failure to pay the claim may result in a pursuit of the bad-faith penalty in court pursuant to Tenn. Code Ann. § 56-7-105.

EXHIBIT
3



As always, feel free to contact me at the number above should you have any questions or would like to discuss further. Thank you for your immediate attention to this matter.

Sincerely,

*Sonya S. Wright*

Sonya S. Wright

Copy



**The Hanover Insurance Group**

FILED
2013 AUG 27 PH 12: 11
RICHARD R. ROOKER, CLERK
D.C.

10/10/2013

Sonya S. Wright, Esq.
Hagan & Farrar
106 North Church Street
Murfreesboro, TN 37130

Re: Insured: Shane and Allyson Decker
Claim No.: 15-00114700
Policy No.: HV5-9579040
Date of Loss: 5/13/2013

Dear Ms. Wright:

This correspondence is in response to your letter, dated September 30, 2013, regarding a claim for sinkhole damages to the property located at 520 Scotts Creek Trail, Murfreesboro, TN. A certified copy of the policy has been mailed to the address provided.

The following is a summary of the initial findings regarding the sinkhole investigation, conducted by HSA Engineers & Scientists.

HSA Engineers & Scientists did complete an inspection of the above referenced property to determine (1) the presence of sinkhole activity and (2) whether sinkhole activity has affected the physical building structure. Based on the physical evidence from the investigation, it was determined that there was evidence of sinkhole activity; however, the identified sinkhole activity conditions and cover-collapse sinkholes are not affecting the building structure. Therefore, there is no physical loss to the covered property.

HSA was also charged with establishing the cause of the damage to the building, as well as investigating whether the damage to the building was caused by sinkhole activity. Based on the data collected and reviewed, it is HSA Engineers & Scientists' opinion that sinkhole activity is not a cause of the physical damage to the home.

At this point, we have decided to conduct a peer review of the initial report in order to confirm the opinion that has been provided to Hanover Insurance. A separate engineering firm has been hired to review the initial report data and offer their opinion. We will follow up with your office when the review has been completed and coverage assessed and confirmed.

Sincerely

Amanda Boiteau
Property Adjuster

**EXHIBIT**

**4**


Copy

Mary Beth Hagan
Amy J. Farrar
Sonya Smith Wright
Joshua A. Jenkins
James A. Turner



FILED

2013 DEC 27

RICHARD R. ROORER, CLERK

_____D.C.

1106 North Church Street
Murfreesboro, TN 37130
Telephone: 615.800.4747
Facsimile: 615.900.3473
www.haganfarrar.com

October 23, 2013

<u>SENT VIA FACSIMILE: (508) 926-5660</u>
Ms. Amanda Boiteau
Hanover Insurance Company

Re:     Insured:     Shane & Allyson Decker
        Claim No.:   15-00114700
        Date of Loss: 5/13/2013

Dear Ms. Boiteau:

       We are in receipt of your letter regarding an additional investigation of this claim. We would ask that you please confirm when the peer review will be conducted so that we have a time frame of the process of this claim. Also, please provide a telephone number where you may be reached if additional questions or concerns should arise.

       Thank you for your immediate attention to this matter.

       Sincerely,

       Sonya S. Wright

       Sonya S. Wright

EXHIBIT
5

COPY

# STATE OF TENNESSEE
## DAVIDSON COUNTY
## 20TH JUDICIAL DISTRICT

☑ First
☐ Alias
☐ Pluries

Shane and Alyson Decker

CIVIL ACTION
DOCKET NO. 13C5337

**Plaintiff**

Method of Service:

☐ Davidson County Sheriff

**Vs.**

☐ Out of County Sheriff

Hanover Insurance Company

☐ Secretary of State

☐ Certified Mail

☐ Personal Service

☒ Commissioner of Insurance $15

**Defendant**

DI w/c, exs, int reg

To the above named Defendant:

You are summoned to appear and defend a civil action filed against you in the Circuit Court, 1 Public Square, Room 302, P.O. Box 196303, Nashville, TN 37219-6303, and your defense must be made within thirty (30) days from the date this summons is served upon you. You are further directed to file your defense with the Clerk of the Court and send a copy to the Plaintiff's attorney at the address listed below.

In case of your failure to defend this action by the above date, judgment by default will be rendered against you for the relief demanded in the complaint.

ISSUED: Dec 27, 2013

**RICHARD R. ROOKER**
Circuit Court Clerk
Davidson County, Tennessee

By: _____
Deputy Clerk

| ATTORNEY FOR PLAINTIFF | Sonya S. Wright |
|---|---|
| or | 106 North Church Street, Murfreesboro, TN 37130 |
| PLAINTIFF'S ADDRESS | Address |

TO THE SHERIFF:

Please execute this summons and make your return hereon as provided by law.

**RICHARD R. ROOKER**
Circuit Court Clerk

Received this summons for service this _____ day of _____, 20____.

_____
**SHERIFF**

♿ To request an ADA accommodation, please contact Dart Gore at (615) 880-3309.

Copy

## RETURN ON PERSONAL SERVICE OF SUMMONS

I hereby certify and return that on the _____ day of _____ **JAN 0 8 2014** _____, 20 _____, I:

☐ served this summons and complaint/petition on _____

**SERVED BY LEAVING COPY**                                                    in the following manner:
**TE. COMM. OF INS.** _____

☐ failed to serve this summons within 90 days after its issuance because _____

_____

Susana Herrera
_____
Sheriff/Process Server

### RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return, that on the _____ day of _____, 20 _____ I sent, postage prepaid by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in Docket No. _____ to the defendant, _____. On the _____ day of _____, I received the return receipt for said registered or certified mail, which had been signed by _____ on the _____ day of _____, 20 _____. Said return receipt is attached to this original summons and both documents are being sent herewith to the Circuit Court Clerk for filing.

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS

_____ DAY OF _____, 20 _____.

_____ NOTARY PUBLIC or _____ DEPUTY CLERK

MY COMMISSION EXPIRES: _____

PLAINTIFF, PLAINTIFF'S ATTORNEY OR OTHER PERSON
AUTHORIZED BY STATUTE TO SERVE PROCESS

### NOTICE

TO THE DEFENDANT(S):

Tennessee law provides a ten thousand dollar ($10,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

ATTACH

RETURN

RECEIPT

HERE

(IF APPLICABLE)

STATE OF TENNESSEE
COUNTY OF DAVIDSON

I, Richard R. Rooker, Clerk of the Circuit Court in the State and County aforesaid, do hereby certify this to be a true and correct copy of the original summons issued in this case.

RICHARD R. ROOKER, CLERK

(To be completed only if
copy certification required.)

By: _____ D.C.

Copy

**STATE OF TENNESSEE**
**Department of Commerce and Insurance**
**500 James Robertson Parkway**
**Nashville, TN 37243-1131**
**PH - 615.532.5260, FX - 615.532.2788**
**Jerald.E.Gilbert@tn.gov**

FILED
2014 JAN 14  PH 12: 29

January 9, 2014

Hanover Insurance Company
440 Lincoln Street
Worcester, MA  01653-0002
NAIC # 22292

Certified Mail
Return Receipt Requested
7012 3460 0002 8941 5475
Cashier # 13671

Re:   Shane And Alyson Decker  V.  Hanover Insurance Company

Docket # 13C5337

To Whom It May Concern:

Pursuant to Tennessee Code Annotated § 56-2-504 or § 56-2-506, the Department of Commerce and Insurance was served January 9, 2014, on your behalf in connection with the above-styled proceeding.  Documentation relating to the subject is herein enclosed.

Jerald E. Gilbert
Designated Agent
Service of Process

Enclosures

cc: Circuit Court Clerk
    Davidson County
    1 Public Square, Room 302
    Nashville, Tn  37219-6303

Copy

CIRCUIT COURT SUMMONS                                    NASHVILLE, TENNESSEE

## STATE OF TENNESSEE
## DAVIDSON COUNTY
## 20TH JUDICIAL DISTRICT

☑ First
☐ Alias
☐ Pluries

Shane and Alyson Decker

CIVIL ACTION
DOCKET NO. _13C5337_

_____
                                          Plaintiff

Vs.

Hanover Insurance Company

_____

_____
                                          Defendant

**Method of Service:**

☐ Davidson County Sheriff

☐ Out of County Sheriff

☐ Secretary of State

☐ Certified Mail

☐ Personal Service

☒ Commissioner of Insurance

**To the above named Defendant:**

You are summoned to appear and defend a civil action filed against you in the Circuit Court, 1 Public Square, Room 302, P.O. Box 196303, Nashville, TN 37219-6303, and your defense must be made within thirty (30) days from the date this summons is served upon you. You are further directed to file your defense with the Clerk of the Court and send a copy to the Plaintiff's attorney at the address listed below.

In case of your failure to defend this action by the above date, judgment by default will be rendered against you for the relief demanded in the complaint.

ISSUED: _Dec 27, 2013_

**RICHARD R. ROOKER**
Circuit Court Clerk
Davidson County, Tennessee

By: _____
                Deputy Clerk

| ATTORNEY FOR PLAINTIFF | Sonya S. Wright |
| or | 106 North Church Street, Murfreesboro, TN 37130 |
| PLAINTIFF'S ADDRESS | Address |

**TO THE SHERIFF:**

Please execute this summons and make your return hereon as provided by law.

**RICHARD R. ROOKER**
Circuit Court Clerk

Received this summons for service this _____ day of _____, 20____.

**SHERIFF**

To request an ADA accommodation, please contact Dart Gore at (615) 880-3309.

Copy

## RETURN ON PERSONAL SERVICE OF SUMMONS

I hereby certify and return that on the _____ day of _____ , 20 _____ , I:

JAN 0 8 2014

SERVED BY LEAVING COPY

served this summons and complaint/petition on _____

W/COMM. OF INS.

in the following manner:

_____

failed to serve this summons within 90 days after its issuance because _____

Susana Herrera

Herrera

Sheriff/Process Server

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return, that on the _____ day of _____ , 20 _____ I sent, postage prepaid by

registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in Docket No.

_____ to the defendant, _____ . On the _____ day of

_____ , _____ , I received the return receipt for said registered or certified mail, which had been signed

by _____ on the _____ day of _____ , 20 _____ . Said return
20

receipt is attached to this original summons and both documents are being sent herewith to the Circuit Court Clerk for filing.

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS

_____ DAY OF _____ , 20 _____ .

_____
PLAINTIFF, PLAINTIFF'S ATTORNEY OR OTHER PERSON
AUTHORIZED BY STATUTE TO SERVE PROCESS

_____ NOTARY PUBLIC or _____ DEPUTY CLERK

MY COMMISSION EXPIRES: _____

## NOTICE

TO THE DEFENDANT(S):

Tennessee law provides a ten thousand dollar ($10,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

ATTACH

RETURN

RECEIPT

HERE

(IF APPLICABLE)

STATE OF TENNESSEE
COUNTY OF DAVIDSON

(To be completed only if
copy certification required.)

I, Richard R. Rooker, Clerk of the Circuit Court in the State and County aforesaid, do hereby certify this to be a true and correct copy of the original summons issued, in this case.

RICHARD R. ROOKER, CLERK

By: _____ D.C.

| Pleadings | Payments | Services and Returns | Court Dates |
|-----------|----------|----------------------|-------------|
| Judgments | Executions | Addresses | Bankruptcy |

**Pleadings**          **Printout**

## Circuit Pleadings/Orders

**Entry Date: 12/27/2013  P1- DECKER, SHANE | P2- DECKER, ALYSON**

**Docket #: 13C5337**            vs.                           **CONTRACT/DEBT COMPLAINT**

                              **D1- HANOVER INSURANCE COMPANY**

**COURT 8**                  **JURY TRIAL**                **COMMENTS: BREACH**

| # | Date | Description | PDF | View |
|---|------|-------------|-----|------|
| 1 | 12.27.13 | CONTRACT/DEBT COMPLAINT 598026 | PDF | View |
| 2 | 12.27.13 | EXHIBIT COLLECTIVE AS "1-5" (TO COMPLAINT) | | View |
| 3 | 12.27.13 | SUMMONS COMM. INS.-D1    W/C,E,INT,REQ | PDF | View |
| 4 | 01.09.14 | RETURN OF SERVICE-D1-SERVED    RT-01.08.14 | PDF | View |
| 5 | 01.14.14 | COMMISSIONER OF INS. AFFIDAVIT OF SERVICE    SERVICE VERIFIED | PDF | View |
| 6 | | | | View |
| 7 | | | | View |
| 8 | | | | View |
| 9 | | | | View |
| 10 | | | | View |
| 11 | | | | View |
| 12 | | | | View |

`<<` `<` `>` `>>` Go To 5   of 5 Lines